**Vladimir PODIO, Petitioner,**

*v.*

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 97–4254.**

United States Court of Appeals, Seventh Circuit.

Argued July 7, 1998.

Decided Aug. 25, 1998.

Heidi L. Widell (argued), Azulay & Azulay, Chicago, IL, for Petitioner.

Janet Reno, United States Attorney, Office of the United States Attorney General, Washington, DC; Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL; Holly Gimbel (argued), David M. McConnell, Michele Y.F. Sarko, Kristal A. Marlow, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before BAUER, ESCHBACH, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

· Vladimir Podio is a 42–year–old native and citizen of Ukraine. An immigration judge and the Bureau of Immigration Affairs ("BIA") determined that Podio was ineligible for asylum or withholding of deportation because he had not suffered past persecution and did not have a well-founded fear of future persecution. See 8 U.S.C. §§ 1158, 1253(h). Podio challenges those determinations, arguing that he was persecuted on account of his religion—he has been a Baptist all his life—and that he has a well-founded fear of future persecution for the same reason. Podio also contends that his due process rights were violated during his deportation hearing. Although the record as it stands does not compel us to conclude that Podio is eligible for asylum or withholding of deportation, we find that his deportation hearing did not comport with the requirements of due process. Podio was not allowed to complete his own testimony or to present witnesses to corroborate his testimony. Accordingly, we reverse and remand for further proceedings consistent with this decision.

I.

Podio entered the United States on a tourist visa in 1990 and in 1992 applied for asylum with the Immigration and Naturalization Service ("INS"). The INS has discretion to grant asylum to applicants who qualify as refugees. A "refugee" is a person who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular

social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In 1995, the INS denied Podio's application and issued an Order to Show Cause. On May 7, 1996, Podio appeared before an immigration judge and admitted deportability but requested asylum, withholding of deportation or, alternatively, voluntary departure.

At his deportation hearing, which was conducted through an interpreter, Podio maintained that he had been persecuted on account of his religious beliefs. Podio testified that his entire family was Baptist and that he had practiced that religion since his childhood; that he was inducted by force into a military construction battalion where he logged timber for two years; that he was falsely accused of various crimes and arrested "many times" merely because he was a Baptist; and that as a consequence of the false accusations he was sentenced to four years in prison and sent to Siberia to serve this term. Podio testified that he suffered a concussion during his years of "persecution" and as a result continues to experience memory lapses. It is not clear whether this alleged injury was received in Siberia or elsewhere. When Podio's attorney attempted to question Podio about the treatment he allegedly received in prison, the immigration judge intervened and admonished that he did not "want to hear anything about what happened in prison."

Podio testified that in 1989 he went into hiding at his parents' house. In 1990, he said, other Baptists helped him obtain tourist papers so he could come to the United States. Podio testified that in 1992, well after his arrival in the United States, he received letters from his wife and parents telling him that the police were looking for him. While at the hearing Podio did not have copies of those letters or other written documentation of his alleged travails, he did propose to corroborate his story through the testimony of his brother and sister. These two individuals were present at the deportation hearing. Apparently at some point after 1991, they had followed Podio to the United States, and both had been granted asylum. But the immigration judge refused to allow them to testify, stating: "I don't care about them. They've got nothing to do with this case."

The immigration judge denied Podio's application for asylum or withholding of deportation but granted him voluntary departure. The judge reasoned that Podio's testimony was "generalized, selfserving and uncorroborated by any credible evidence." Moreover, the judge explained that even if Podio's testimony were considered truthful and even if the events it described amounted to past persecution, all of those events occurred before the breakup of the Soviet Union in 1991. Therefore, in light of new conditions described in the State Department's September 1995 Country Profile on Ukraine, the judge found that there was little likelihood that Podio would be subject to future persecution should he return home.

On appeal to the BIA, Podio argued that the immigration judge had violated his due process rights by systematically cutting short his testimony and by not allowing his brother and sister to take the stand in order to corroborate his testimony. Podio asserted that, if the judge had allowed him to testify regarding his imprisonment in Siberia, he would have testified that he had been tortured. Podio also argued that what little testimony he did succeed in giving at the hearing was itself sufficient for him to qualify for asylum.

The BIA disagreed. The Board conceded that the immigration judge "occasionally became frustrated over a failure on the part of [Podio] to give direct, responsive answers to his attorney's questions," but concluded that the judge's interruptions "appear to have been efforts on his part to keep the testimony focused on the issues in the case." The Board also concluded that Podio had at most been the victim of discrimination during his military service, and that he had failed to set forth a factual basis for his belief that he had been charged with various crimes because he was a Baptist. Similarly, the Board explained that Podio's testimony failed to persuade it that the harshness of the imprisonment in Siberia was not due to some "aggravating factor" in the crime with which Podio had been charged. Finally, the Board pointed to the State Department's

view that conditions in Ukraine had shown "major improvements" after 1991, and that evangelicals "are no longer denied religious freedom." Thus, the Board concluded that, even assuming that the judge had "violated some of the respondent's procedural rights," there was no evidence that the violation affected the outcome of the case. Accordingly, the Board dismissed Podio's appeal.

## II.

 Podio contends that the immigration judge violated his due process rights by denying him the opportunity to testify about pertinent facts and to present evidence in his favor. Because Podio's deportation proceedings began before April 1, 1997, we review them under the statutory provisions as they existed prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act. *See Bereza v. INS*, 115 F.3d 468, 470 n. 2 (7th.Cir.1997). We review the BIA's conclusions of law de novo. *See Borca v. INS*, 77 F.3d 210, 214 (7th Cir.1996). The BIA's determination that the immigration judge did not violate due process by denying Podio the right to testify about certain facts and by refusing to allow his brother and sister to testify is a conclusion of law. Therefore we review the determination de novo.

 We frequently have emphasized that the requirement of due process applies to deportation proceedings. *Torres v. INS*, 144 F.3d 472, 473 (7th Cir.1998); *Chow v. INS*, 113 F.3d 659, 667 (7th Cir.1997); *see Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). A deportation hearing "must satisfy currently prevailing norms of fairness." *Batanic v. INS*, 12 F.3d 662, 666 (7th Cir.1993). Although the Supreme Court has never specifically defined the requirements of due process in a deportation hearing, Congress has set

forth minimal procedural requirements including, notably, the reasonable opportunity to examine the evidence and to present witnesses, and a decision based on reasonable, substantial, and probative evidence. *Id.*; *see* 8 U.S.C. § 1252(b).

 On appeal, the INS admits that the immigration judge did not allow Podio's siblings to testify, and concedes that he may have "interrupted" Podio's testimony. The INS argues, however, that there are other reasons why the record does not support Podio's claim that he was persecuted and has a well-founded fear of persecution. According to the INS, Podio's answers at his deportation hearing were not always "straightforward," and the events he described would not, in themselves, demonstrate that he was persecuted or that he has a well-founded fear of persecution. We are troubled by the implication of this argument, for it asks us to disregard Podio's contention that, at his hearing, he was not permitted to present the evidence that he was *entitled* to present.[1] We will not marginalize or bracket the requirements of due process in assessing the reasonableness of the immigration judge's decision. The issue we address here is not whether the evidence as it stands supports the result reached by the immigration judge and the BIA. Rather, the issue is whether the original deportation hearing was conducted in a fair enough fashion for one to determine that the BIA's decision was based on reasonable, substantial, and probative evidence.

 While "the [i]mmigration [j]udge has broad discretion to control the manner of interrogation in order to ascertain the truth," *Iliev v. INS*, 127 F.3d 638, 643 (7th Cir.1997), that discretion is bounded by the applicant's right to receive a fair hearing. The circumstances of this case do not allow us to conclude that Podio received a fair hearing. To begin with, the immigration judge frequently

1. We must emphasize that our review of a due process claim is de novo. This standard is not to be confused with the highly deferential "substantial evidence" standard we apply when reviewing an immigration judge's factual conclusions. To prevail under the latter standard, a petitioner must show "not merely that the record evidence

supports a conclusion contrary to that reached by the BIA but that the evidence compels that contrary conclusion." *Bradvica v. INS*, 128 F.3d 1009, 1012 (7th Cir.1997) (citing *INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

interrupted Podio's attorney and took over the questioning, so that in the end the judge, rather than the attorney, had elicited whatever testimony Podio was able to give. In part, these interruptions appear to be due to the judge's exasperation with what he regarded as the incompetence of the attorney. The judge stated, for example:

> I'll tell you right now, counsel, I don't appreciate you coming in here, after submitting a bare bone application, and getting all this testimony out of the blue. As an attorney that's retained by the respondent, you have an obligation and duty to present a coherent case.... I don't appreciate sitting here and waiting and waiting to pull it out of him like I have to pull teeth....

Much of the record, however, evidences not the "pulling of teeth" but the immigration judge's refusal to allow Podio to complete his testimony. Throughout the hearing, the immigration judge frequently stated his desire to "get on with something else." This was the case, significantly, when he prevented Podio from testifying about his experience in Siberia: "I don't want to hear anything about what happened in prison. He served time in prison, sentenced. Let's get on with something else."

The frequency of the immigration judge's interruptions, and the impatience evident in many of his comments, leave us unconvinced that the immigration judge "was merely trying to point [Podio] in what he thought was the right direction," and that Podio "could have testified further if he had so desired." *Bereza*, 115 F.3d at 473. More importantly, we are not convinced that the interruptions "restricted [Podio's] testimony" in a positive manner by "serv[ing] to focus the hearings on relevant matters." *Kuciemba v. INS*, 92 F.3d 496, 501 (7th Cir.1996). Podio's testimony regarding his experiences in a Siberian jail may or may not have conclusively supported his claim that he was persecuted on account of his religion, but little imagination is needed to perceive the *relevance* of such testimony to that claim.

Even more troubling than the manner in which the immigration judge curtailed Podio's testimony regarding the treatment allotted to him in Siberia, was his refusal to allow Podio's brother and sister to testify at all. The purpose of their testimony was to corroborate Podio's claims that he had been persecuted and that he had a well-founded fear of future persecution. Normally, a showing of past persecution entails a well-founded fear of future persecution, but not if conditions in the country of origin have changed "to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return." *Bereza*, 115 F.3d at 472 (internal citation omitted). Here, the immigration judge found significant the assertion, in a State Department report, that conditions in Ukraine have improved since the promulgation of a law regarding religious freedom in 1991. But the State Department report is itself equivocal, for it notes that a law having far less favorable consequences for religious freedom was passed in 1994. Podio's siblings appear to have left Ukraine *after* 1991, and the INS granted asylum to both of them. Thus, while the grants of asylum are not dispositive, they certainly suggest that the INS's own view of conditions in Ukraine may conflict with those of the State Department. In sum, we see no reasonable basis for refusing altogether to hear from Podio's brother and sister.

Given that Podio sought to have his brother and sister testify in order to corroborate his claims, the situation in this case must be distinguished from that in *Kuciemba*, 92 F.3d 496, and in *Drobny v. INS*, 947 F.2d 241, 245 (7th Cir.1991). In each of those cases we held that the immigration judge did not abuse his discretion in refusing to entertain testimony concerning the hardship that would be experienced by an applicant's friends and relations (other than a lawfully resident spouse, parent or child) if he were to be deported. Nothing in the present case indicates that Podio's brother and sister proposed merely to testify regarding the consequences that Podio's deportation would have for themselves. Notably, the immigration judge gave no reason (other than the conclusory statement that "they've got nothing to do with this case") for refusing to allow the siblings to testify, and at oral argument the INS was unable to offer any such reason; in

fact, the INS conceded that their testimony would have been possibly relevant to corroborate Podio's claims of persecution. We think, in light of the fact that Podio's brother and sister followed him to the United States from Ukraine and were both granted asylum, that the record below renders it sufficiently clear that their testimony would have been relevant. Thus, we must conclude that, in arbitrarily refusing to hear that testimony, the immigration judge failed to give Podio a fair hearing.

The immigration judge concluded that Podio's testimony was "uncorroborated." But Podio had no chance to corroborate his testimony because the judge refused to allow his siblings to testify. We note our previous rulings that a petitioner must show that an immigration judge's refusal to entertain the testimony of his witnesses prejudiced him, i.e., that the testimony he sought to introduce " 'had the potential for affecting the outcome of ... deportation proceedings.' " *Kuciemba*, 92 F.3d at 501 (quoting *Shahandeh–Pey v. INS*, 831 F.2d 1384, 1389 (7th Cir.1987)). In *Kuciemba*, we dealt with a situation in which the immigration judge refused to entertain testimony that was patently irrelevant. In the present case, Podio was prejudiced because he was not given the chance to offer the very corroboration found lacking when the immigration judge denied his application for asylum or withholding of deportation.

■■■ The INS argues that Podio should have sought, on appeal before the BIA, to produce "specific reasons" why the testimony of his brother and sister would have corroborated his claims. While the BIA "has the power to receive evidence," *Reyes–Hernandez v. INS*, 89 F.3d 490, 493 (7th Cir.1996), its long-standing practice is to refuse to do so. *Id.* The BIA is an appellate body "whose function is to review, not to create, a record." *Matter of Fedorenko*, 19 I. & N. Dec. 57, 74 (BIA 1984). Cf. 8 U.S.C. § 1252(b)(4)(A) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based."). It is true that 8 C.F.R. § 3.2 provides that petitioners may bring "new evidence" or "changed circumstances" to the

attention of the BIA by filing a motion to reopen the case. *Palmer v. INS*, 4 F.3d 482, 488 (7th Cir.1993). This is not, however, a case in which a petitioner seeks to present "new" evidence. Rather, the immigration judge refused to allow Podio's siblings to testify, and offered no explanation at all for this refusal. Under these circumstances, we can only conclude that Podio must be given a second, and a real, chance to "create a record" in a deportation hearing that comports with the requirements of due process.

### III.

In a different context, we have said that "prejudice to the right of access to the courts occurs whenever the actions of a prison official causes [sic] court doors to be actually shut on a complaint, regardless of whether the suit would ultimately have succeeded." *Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir.1995). We think that the present situation is somewhat analogous. Podio was provided physical access to the courts, but he was not provided meaningful access. Like anyone, Podio had "the right to rise to the level of being a failure." *Id.* Podio was deprived of that right, for he was not given a fair shot at presenting and corroborating his case. Since Podio was not allowed to complete his testimony or to present corroborating witnesses, we Reverse the BIA's decision and Remand the case for further proceedings in accordance with this opinion. While the choice of a presiding judge is left to the discretion of the BIA, we believe that all of the parties concerned, including the original immigration judge himself, would prefer that the new hearing be held before a different judge.