**Bunmi AKINSANYA, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 03–1387.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 2004.

Decided July 9, 2004.

Christopher W. Helt, Helt & Associates, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Carolyn M. Piccotti, Department of Justice, Civil Division, Immigration Litigation, Jeffrey A. Wadsworth, Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, for Respondent.

Before POSNER, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

### ORDER

Nigerian native Bunmi Akinsanya applied for asylum and other relief, alleging that she faced religious persecution on account of her Christian beliefs. The immigration judge denied her request for asylum, refused to grant withholding of deportation, and denied relief under the Convention Against Torture, finding that Akinsanya's testimony was not credible and that she had failed to supply other support for her claim. Akinsanya appealed, and the BIA summarily affirmed. She now petitions for review of the BIA's decision. We deny the petition and thus allow the BIA's decision to stand.

### I

Akinsanya applied for asylum in April 1993, alleging that she had fled from the predominantly Muslim area of Kano, Nigeria, for the United States in 1991 after bands of "Muslim fanatics" attacked her. Akinsanya explained in her written application that Muslims in the region began looting homes and shops and destroying property during protests that were triggered by the visit of a Christian preacher. Akinsanya asserted that rioters targeted her shop during this disturbance and burned it because they knew that she was Christian. The next day Akinsanya found that her family home had also been burned down and her stepfather had been killed. She further claimed that two of her brothers "were still missing till now." Because of these incidents, Akinsanya stated, she feared returning to Nigeria where she could be "killed at anytime [sic] by Muslims who are still secretly eliminating Christians in known targets."

At a hearing in January 2001, Akinsanya recounted several other incidents of persecution. She stated that in Kano she had been the secretary of a local Christian organization of about 150 members. Beginning in late 1989, local Muslims would periodically interrupt prayer meetings of Akinsanya's organization, beating the members and threatening them with knives and guns. Akinsanya and other executives of the organization were arrested by Muslims more than six times beginning in 1990. She explained that these detentions often lasted weeks and included forced labor, beatings, and deprivation of

all nourishment except "polluted" food. Akinsanya claimed that the organization's president and public relations officer were eventually beaten to death in May of 1991. In addition, she noted that her younger stepbrother was kidnapped by Muslims in 1991 and held for three weeks, during which time he was beaten and told to become a Muslim. Akinsanya testified that she and other Christians had complained to the police about these abuses "many times," but that the police did not help them.

Matters came to a head in July or August 1991, when Muslim fanatics kidnapped Akinsanya and set fire to her home. A mob of more than 30 people came to the house with guns and took her to a Muslim cleric's home, where she was detained for three weeks. They beat her and poured boiling water on her. At the cleric's home, Akinsanya and the other executives of the Christian association were deprived of light and food and were given only "polluted water" to drink. Their captors told them that they "should stop the association and . . . shouldn't proclaim the name of Jesus anymore." When she was finally released, Akinsanya returned to her home and found that it had been burned down. The next day, her mother told her that Muslim fanatics had set the fire and that her stepfather was in the hospital with third degree burns. He died from those burns later that month.

On cross examination, the lawyer for the government (at the time, representing the INS) asked Akinsanya to explain a number of inconsistent or unusual points in her testimony. First, he pointed out that her asylum application stated that the fire that destroyed her home occurred on October 13, 1991, while she had testified that it took place in July or August 1991. Akinsanya responded that the statement in the application was "a mistake . . . because it's been a long time." The INS lawyer also asked Akinsanya why her asylum application claimed that Muslims had burned down her store, yet she had not mentioned this incident in her testimony. Akinsanya could not account for the omission, but she confirmed that Muslims had burned down the store at which she was working—a store owned by her mother. The INS lawyer then asked Akinsanya how, if she had really been detained for three weeks without any food, she had managed to survive. Akinsanya replied that, as a Christian, she was accustomed to fasting for long periods. Finally, Akinsanya was asked to explain why she had not mentioned her six arrests and beatings on her asylum application or in her interview with an asylum officer. Akinsanya responded that "seven years ago I was—when I came, I was in fear, I was in—I wasn't myself. I lost some of the memory. But now I could recall it."

Akinsanya's inconsistencies were not her only problem. Six months prior to Akinsanya's hearing, the IJ noted the lack of detail in her asylum application and requested that she prepare a pre-hearing statement by November—the deadline for all documents to be filed. The IJ also suggested that Akinsanya get copies of death certificates for relatives whom she claimed had been killed and have surviving relatives write letters corroborating her version of events. Akinsanya did not submit any of these documents by November, but instead brought them to her hearing the following January. When the IJ asked Akinsanya why she was submitting the documents so late, she stated that she had been out of town tending to a sick relative and had only retrieved her mail three days before the hearing. The IJ pointed out that Akinsanya could still have submitted her own statement on time, to which she responded that she wished to submit all of the requested documents at once. Because the IJ did not deem this "an ade-

quate excuse," he rejected the documents as untimely, leaving Akinsanya without documentary support for her testimony.

At the close of the hearing, the IJ concluded that Akinsanya had failed to demonstrate her eligibility for asylum. Although he believed her basic "contention that there are tensions and rioting between Christians and Muslims in the northern states of Nigeria," he concluded that "many of the salient facts are inconsistent and are not credible." He noted that Akinsanya's demeanor was "markedly different" on cross-examination than on direct examination, and that she seemed "extremely tentative and barely audible." He found it suspicious that Akinsanya had failed to mention her six arrests in her asylum application, and found her claim that her memory got better with the passage of time "not worthy of belief." The IJ also pointed out that Akinsanya had made inconsistent statements about the fire at her store, and that her claim about being denied food by her captors for three weeks was "incredible." Because he thought "the salient elements" of Akinsanya's testimony were "not valid" or bolstered by supporting documents, the IJ concluded that Akinsanya had not met her burden of proof and denied her application for asylum. In the alternative, the IJ stated that, even assuming the truthfulness of Akinsanya's testimony concerning the events in Kano, she could still safely relocate to southern Nigeria, where members of her own ethnic group predominated.

## II

### A

■ Before this court, Akinsanya has devoted most of her efforts to her challenge to the IJ's conclusion that she failed to establish past persecution. Curiously, she does not directly challenge the IJ's finding that her testimony was not credi-

ble. Instead, she appears to be saying that even if her testimony was questionable, she nonetheless established past persecution by showing that Muslims frequently detained and beat her and other executives in her Christian organization. She argues that she met her burden through "documentation supporting her claim, including her own written statement, pictures of her family home after it was destroyed by fire, the death certificate of her stepfather, correspondence from her family members in Nigeria, and newspaper articles about the Sharia riots in Nigeria in 2000."

An applicant for asylum must present credible testimony or other support for her asylum claim or it is "doomed." *Uwase v. Ashcroft*, 349 F.3d 1039, 1041 (7th Cir. 2003). Once an IJ finds an applicant's testimony to be unworthy of belief, the applicant cannot rely solely on her own testimony to establish entitlement to asylum without challenging the credibility determination. *Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir.2003).

In this case, the IJ stated that Akinsanya was "not credible" and that it was "unlikely" that the events she described actually occurred. Akinsanya has not challenged this finding, and even if she had she would face an uphill battle, for this court overturns credibility determinations only under extraordinary circumstances. *Oforji v. Ashcroft*, 354 F.3d 609, 613 (7th Cir.2003). The IJ reasonably relied on the inconsistences between Akinsanya's asylum application and her hearing testimony, which concerned events at the heart of her claims. See *Capric v. Ashcroft*, 355 F.3d 1075, 1089–90 (7th Cir.2004) (significant discrepancies between applicant's statements supported adverse credibility determination). Akinsanya could not explain these inconsistencies, except to assert dubiously that her memory had improved

852

with time. Accordingly, we accept the IJ's determination that Akinsanya's testimony was not credible and reject her argument that this testimony somehow entitled her to asylum.

Nor can Akinsanya succeed on the basis of the remaining evidence in the record. She claims generally to have submitted a number of documents that established her entitlement to asylum. It is true that corroborating evidence can be used to convince an IJ of the truth of an otherwise unpersuasive claim. *See Capric*, 355 F.3d at 1086. But here, the statement, photos, letters, and newspaper articles that Akinsanya claims to have submitted were not properly before the IJ.[1] As we have already noted, the IJ rejected Akinsanya's attempt to submit these documents as untimely. She did not challenge that ruling before the BIA and does not do so here. In the absence of either documentation or credible testimony to demonstrate that she had been or would be persecuted, Akinsanya cannot prevail. The IJ's determination that she was not entitled to asylum was supported by substantial evidence.

 Before leaving this subject, we add a word about the IJ's alternative reason for rejecting her asylum claim: the fact that the record indicates that the southern part of Nigeria is safe for Christians, even if the north is not. The government introduced the 1999 Country Report on Human Rights Practices in Nigeria (issued February 25, 2000), which indicated that the southern region of the country is predominantly Christian and is populated largely by members of the Yoruba tribe, to which Akinsanya belongs. Once that evidence was in the record, it was up to Akinsanya to explain why internal relocation to that part of Nigeria was not feasible. 8 C.F.R. § 208.13; *Gonzalez–Hernandez v. Ashcroft*, 336 F.3d 995, 998–99 (9th Cir.2003) (country report showing internal relocation to be a "viable alternative" rebutted presumption of well-founded fear of future persecution). No one has suggested, for example, that Nigeria maintains a system of residence permits that restrict internal movement within the country. *Cf. Avetova–Elisseva v. INS*, 213 F.3d 1192, 1199 n. 17 (9th Cir.2000). In the absence of any such showing, Akinsanya could not prevail even if we were to reject all of the credibility findings discussed above.

## B

Because Akinsanya has failed to establish that she is entitled to asylum, her claims under the more stringent requirements for withholding of deportation and relief under the Torture Convention must also fail. *See Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir.2003). Her petition for review is DENIED.

---

1. Akinsanya has attached these and other documents to her opening brief on appeal. As the respondent correctly points out, we cannot consider these items, because our review is limited to the administrative record on which the IJ's order was based. 8 U.S.C. § 1252(b)(4); *Podio v. INS*, 153 F.3d 506, 511 (7th Cir.1998). We therefore grant the respondent's motion under Fed. R.App. P. 27(b) to strike the additional exhibits.