File Name: 05a0025n.06
Filed: January 12, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ALEX BORIS ABRAMOVICH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| JOHN ASHCROFT, | ) | |
| | ) | |
| Respondent. | ) | |

Before:      **NELSON** and **COLE**, Circuit Judges, and **SARGUS**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  We have here a petition for review of an order in which the Board of Immigration Appeals summarily affirmed an immigration judge's denial of the petitioner's application for asylum.  The petitioner argues that the immigration judge curtailed testimony improperly and improperly refused to accept and consider other relevant evidence.  He also argues that the Board's affirmance without opinion deprived him of meaningful administrative review.

We are not persuaded that the challenged evidentiary rulings resulted in the denial of a fair hearing.  The immigration judge admitted documentary evidence relating to the topics about which the petitioner was precluded from testifying, and the refusal to accept additional

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

documents has not been shown to have prejudiced the petitioner. Nor are we persuaded that the Board's review of the immigration judge's decision was inadequate. Absence of meaningful review cannot be inferred from use of the Board's summary-affirmance procedure, see *Denko v. INS*, 351 F.3d 717, 728-29 (6th Cir. 2003), and the petitioner has presented no evidence that the Board abdicated its review responsibility in this instance. The petition for review will be denied.

I

The petitioner, Alex Boris Abramovich, is a native and citizen of Kazakhstan. He entered the United States in February of 1996 as a visitor for business. This was his third visit to the United States, the previous two visits having been in 1993 and 1995. Mr. Abramovich applied for asylum in March of 1997 on the ground that he faced persecution in Kazakhstan because of his Jewish ethnicity and his political opinions. The INS referred the application to an immigration judge.

The INS initiated removal proceedings against Mr. Abramovich after he overstayed his visa. In his initial appearance before the immigration judge Mr. Abramovich conceded removability and renewed his application for asylum.

The merits hearing was held in September of 2001. Mr. Abramovich was the only witness. At the hearing the immigration judge limited Mr. Abramovich's testimony in several ways. First, the judge refused to hear testimony "about things that occurred 12 or 13

years ago," before Kazakhstan (a former republic of the USSR) became an independent nation. The judge also barred Mr. Abramovich from testifying about mistreatment of persons other than himself. Finally, because Abramovich had not mentioned politics when testifying about his reasons for seeking asylum, the judge refused to hear subsequently-proffered testimony about his political activities.

The record before the immigration judge included the application for asylum, 47 exhibits submitted by Mr. Abramovich in advance of the hearing, and a U.S. Department of State report on human rights in Kazakhstan. Mr. Abramovich's lawyer pointed out that certain documents which Abramovich had filed with the INS in support of his application for asylum had not been made part of the record, and the immigration judge responded that Mr. Abramovich was responsible for timely submission of the documents and that it was too late for them to be accepted. Citing a lack of available equipment, the judge also declined to watch a videotape depicting family gravestones that Mr. Abramovich said had been vandalized.

The immigration judge denied Mr. Abramovich's asylum application in an oral decision rendered immediately after the hearing. While largely crediting Mr. Abramovich's testimony, the judge concluded that Abramovich did not have a well-founded fear of persecution. Incidents that occurred after Mr. Abramovich's return to Kazakhstan in 1995 did not constitute persecution, in the judge's view, and the judge found it significant that the

State Department report made no reference to "government interference with the practice of Judaism."

Mr. Abramovich appealed to the Board, which summarily affirmed the immigration judge's decision. This timely petition for review followed.[1]

II

Although there is no constitutional right to asylum, aliens facing removal do have a constitutionally-protected right to a full and fair hearing. See *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003). Mr. Abramovich argues that the immigration judge violated his right to due process of law by limiting his testimony and refusing to consider additional evidence.

A

An immigration judge has "broad discretion" to control the taking of testimony, but "that discretion is bounded by the applicant's right to receive a fair hearing." *Podio v. INS*, 153 F.3d 506, 509 (7th Cir. 1998) (internal quotation marks omitted). Here, in our view, the immigration judge did not abuse his discretion by declining to entertain testimony about

---

[1]Mr. Abramovich also moved for reconsideration of the Board's order, but the Board denied the motion. The denial of the motion for reconsideration is not at issue in the present petition for review.

incidents that occurred when Kazakhstan was part of the Soviet Union and testimony about

mistreatment of persons other than Mr. Abramovich.

It is true that such testimony might have been relevant to Mr. Abramovich's asylum

claim. An applicant can make out a prima facie case of eligibility for asylum by showing

past persecution through evidence sufficient to raise a presumption that the applicant has a

well-founded fear of persecution. See 8 U.S.C. §§ 1101(a)(42), 1158(b); 8 C.F.R. §

1208.13(a), (b)(1). An applicant can also demonstrate a well-founded fear of persecution by

establishing that his country has had a "pattern or practice" of persecuting a racial, religious,

or political group of which he is a member. See 8 C.F.R. § 1208.13(b)(2)(iii)(A). (Where

a prima facie case has been established, the government bears the burden of rebutting it by

showing that "a fundamental change in circumstances," such as the institution of a new

government, has removed the foundation for the applicant's fear. See 8 C.F.R. §

1208.13(b)(1)(i)(A).)

In the case at bar, however, we are not persuaded that the immigration judge was

required to take live testimony on all potentially relevant matters. Although the judge

refused to hear testimony about incidents that occurred under the Soviet government, he

agreed to admit and to give "appropriate weight" to documentary evidence concerning such

events.[2] Likewise, although the judge refused to hear live testimony about mistreatment of

_____

[2]An affidavit that Mr. Abramovich had submitted in support of his March 1997
application for asylum was also received in evidence. This affidavit included a detailed
history of the mistreatment suffered by Abramovich and his family over many years, but it

other persons, he admitted affidavits and letters describing such mistreatment. The immigration judge's limitation of the testimony to the most important facts – Mr. Abramovich's own experiences under the current Kazakh government – did not render the hearing fundamentally unfair, as we see it.

Nor was it unfair for the immigration judge to refuse to hear testimony about Mr. Abramovich's political activities. Mr. Abramovich testified at some length about the events that caused him to seek asylum. It was only after Mr. Abramovich had exhausted his recollection that his lawyer asked him about political activities, at which point the immigration judge cut off that line of questioning. Given that Mr. Abramovich had already been afforded an opportunity to describe all incidents of persecution, we do not think that the immigration judge acted improperly. Viewing the proceeding in its entirety, we are satisfied that Mr. Abramovich was given a reasonable opportunity to present his case.

B

When Mr. Abramovich's asylum application was first considered by the INS, the record included "all supporting information provided by the applicant." 8 C.F.R. § 208.9(f). When the INS referred Abramovich's application to the immigration judge, however, the agency was required to forward only the application "together with the appropriate charging

is not clear whether the immigration judge had an opportunity to review the affidavit before the date of the hearing.

document" – not the entire record.  *Id.* § 208.14(c); *Kaur v. INS*, 237 F.3d 1098, 1100 (9th Cir. 2001), *amended*, 249 F.3d 830 (9th Cir. 2001).  Mr. Abramovich was thus responsible for submission of all other documents that he wanted the immigration judge to consider.

The immigration judge advised the parties in October of 2000 that "local operating procedures" required all exhibits to be filed at least 14 days in advance of the merits hearing. Believing, apparently, that they were already part of the record before the immigration judge, Mr. Abramovich did not file certain documents previously submitted to the INS.[3]  On the day of the hearing Mr. Abramovich belatedly sought to have the documents considered, but this attempt was unsuccessful.

It is not necessarily clear that the immigration judge acted properly in refusing to accept the documents.  The government would not have been prejudiced by their being admitted, the government's lawyer having acknowledged that copies (from the INS file on Mr. Abramovich, we presume) were in his possession at the time of the hearing.  But if the immigration judge erred by excluding the documents, Mr. Abramovich has not shown that he was prejudiced by the error.  And a petitioner must demonstrate substantial prejudice to

---

[3]Mr. Abramovich suggests that these documents were part of the asylum application that the INS was required to forward to the immigration judge.  But the record reflects that the documents were not submitted with the asylum application; what they accompanied was a rebuttal that Abramovich filed after the INS notified him of its intent to deny the application.  Accordingly, it does not appear that the INS was required to forward the documents to the immigration court.  See 8 C.F.R. § 208.14(c); *Kaur*, 237 F.3d at 1100.

prevail on a due process challenge to a removal proceeding. See *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000).

Mr. Abramovich points to a portion of the decision in which the immigration judge commented that there was no documentation showing that Abramovich's identification papers identified him as a Jew. But Mr. Abramovich testified to that fact, and the judge generally credited his testimony. Moreover, denial of asylum was not based on doubt as to whether Abramovich was officially identified as a Jew. The decision rested mainly on the fact that Mr. Abramovich returned to Kazakhstan after visits to the United States in 1993 and 1995 and on the immigration judge's determination that what happened after Abramovich's return in 1995 did not rise to the level of persecution. Mr. Abramovich has not explained how the admission of additional documents might have altered that determination.

We do not believe that the immigration judge's failure to watch the videotape depicting the vandalized gravestones rendered the hearing unfair. A transcript of the videotape was admitted into evidence, and there is nothing to suggest that the immigration judge did not consider it. Again, moreover, Mr. Abramovich has not shown that he was prejudiced.

III


Mr. Abramovich argues that the Board's affirmance without opinion violated his statutory right to a meaningful administrative review of the immigration judge's decision. The argument is not persuasive. The Board certainly has a duty to "review the record and assess the [immigration judge's] conclusions." *Denko v. INS*, 351 F.3d 717, 728 (6th Cir. 2003) (internal quotation marks omitted). Contrary to Mr. Abramovich's suggestion, however, affirmance without opinion does not necessarily reflect a failure to carry out that duty. See *id.* at 728-29.

*Denko* teaches that "the nature of the procedure itself" is insufficient to show that the Board, in affirming an immigration judge's decision without opinion, disregarded its review responsibilities. *Id.* at 728. Accordingly, we "will not assume . . . a complete breakdown in the [administrative review] system in the absence of tangible evidence to support such a conclusion." *Id.* at 729. In his submissions to this court, Mr. Abramovich has given us no reason to suppose that the Board failed to consider carefully the merits of the immigration judge's decision. Under *Denko*, therefore, we must presume that the Board's review was adequate.

The petition for review is **DENIED**.