**Akram Qassim HAMID, Petitioner,**

v.

**John D. ASHCROFT, Attorney General of the United States, Respondent.**

Nos. 04–1600, 04–2013.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 17, 2004.

Decided Jan. 31, 2005.

Lawrence S. Schaner, Jenner & Block, Chicago, IL, for Petitioner.

George P. Katsivalis, Chicago, IL, Emily A. Radford, Washington, DC, for Respondent.

Before COFFEY, MANION, and ROVNER, Circuit Judges.

ORDER

Akram Hamid, a Palestinian resident of Syria, pled guilty to charges of conspiring to defraud and to steal. When deportation proceedings were instituted against him, Hamid asked for withholding of re-

moval, 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture, 1465 U.N.T.S. 85, art. 3 (1984), claiming that he would be persecuted and tortured if returned to Syria. The immigration judge denied relief, finding that persecution and torture were unlikely. Hamid now claims not only that the IJ's decision was wrong, but that the IJ denied him due process by refusing to allow an expert witness to testify by telephone from London.

Hamid's parents left Palestine in 1948 and became refugees in Syria. They retained their Syrian refugee status when they relocated to Qatar, where Hamid was born in 1966. Although Hamid was born in Qatar, he is not a Qatari citizen, but instead inherited his parents' status as a refugee in Syria. As such, Hamid was subject to mandatory service in the Syrian military. He was allowed to defer his service while pursuing higher education at Damascus University in Syria, but after obtaining his second master's degree he returned to Qatar rather than report for duty. In 1991, after the Gulf War broke out, he came to the United States on a tourist visa (using his Syrian travel documents), found work in Indiana as a business consultant, and eventually married a United States citizen. On September 21, 2001, he was arrested for participating in a scheme (which the record does not fully describe) to steal and to defraud. He pled guilty to two of the conspiracy counts, received a three-year prison sentence (suspended), and was placed in deportation proceedings as an aggravated felon.

At his hearing before the immigration court, Hamid conceded to the court that his crimes were aggravated felonies, *see* 8 U.S.C. § 1101(a)(43)(G) (theft offense for which term of imprisonment is at least one year); § 1101(a)(43)(M)(i) (fraud offense causing loss greater than $10,000); § 1101(a)(43)(U) (attempt or conspiracy), and that he was deportable. He claimed, however, that he feared persecution and torture if returned to Syria.[1] He gave three reasons: his evasion of military service (punishable by imprisonment); the length of time he has been in the United States (a sign of disloyalty); and the fact that he is Palestinian (a disfavored group in Syria).

In support of his claim, Hamid provided documentary evidence, including reports from the Department of State and from Amnesty International, that torture continued to be practiced in Syrian prisons (particularly military prisons) as recently as 2002. He also provided corroborating affidavits from Dr. Eyal Zisser (Professor of Middle–Eastern History at Tel Aviv University) and Dr. Saleem El–Hasan (President of the Syrian Human Rights Committee in London). Dr. Zisser's affidavit briefly discussed the general political situation in Syria, the government's routine use of torture, and the military service requirement. Dr. El–Hasan's affidavit was more comprehensive, covering in five pages a variety of topics relevant to Hamid's case, such as the general conditions of Palestinian refugees in Syria, the miliary service requirement, prison conditions, and "the special risks faced by Respondent, Akram Hamid in case of his removal to Syria," including the likelihood that he would be imprisoned and tortured. Hamid asked the IJ to allow Dr. El–Hasan (who was in London) to testify by telephone at the hearing, but the IJ denied the request without explanation, simply writing "Mo-

---

1. The government originally designated Qatar as the country to which Hamid should be removed, but Hamid claims that Qatar will not accept him because he is not a citizen. The government therefore designated Syria as an alternate.

tion telephonic conference denied" at the top of the motion.

The IJ ultimately denied Hamid's request for relief. In a 12–page written opinion, he found that Hamid, although credible, had not met his evidentiary burden for either withholding of deportation or relief under the Convention Against Torture. He noted that Hamid had submitted evidence supporting his claim that he believed he would be imprisoned if returned to Syria, but concluded that it did not establish a clear probability of imprisonment. *See INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (alien seeking withholding of deportation must show clear probability of future persecution); *Lin v. Ashcroft,* 385 F.3d 748, 751 (7th Cir.2004). The IJ reviewed the information provided in the State Department's 2002 Syria Country Report, along with the assertions made by Dr. Zisser and Dr. El–Hasan in their affidavits that Hamid would be arrested, interrogated, and imprisoned if returned to Syria. The IJ also considered a July 2000 decree by the president of Syria ("Legislative Decree No. 11") waiving military service—along with the penalties for evasion—for expatriates who pay a fee ranging from $5,000 to $15,000, which suggested to the IJ that Hamid could buy his way out of imprisonment if necessary. Ultimately, the IJ concluded that Hamid had established a risk of imprisonment, not a clear probability. Additionally, the IJ found that imprisonment would not constitute persecution based on any of the statutorily protected grounds, but simply punishment for evasion of military service.

The IJ also acknowledged, based on the 2002 Syria Country Report, that torture continued to be used in Syria, but found that the Report did not indicate that the use of torture was widespread. The IJ therefore concluded that even if Hamid were to be imprisoned, he would not more likely than not be subjected to torture while in prison. *See* 8 C.F.R. § 208.16(c)(2); *Comollari v. Ashcroft,* 378 F.3d 694, 695 (7th Cir.2004) (alien seeking relief under the Convention Against Torture must show that he will more likely than not be tortured in the country of removal).

After the Board of Immigration Appeals affirmed the IJ's decision, Hamid filed a motion for reconsideration. He cited our decision in *Niam v. Ashcroft,* 354 F.3d 652, 659–60 (7th Cir.2004), in which we held that an IJ who refused to allow an expert to testify by telephone about political conditions in Bulgaria deprived the applicant of due process. The BIA summarily denied Hamid's motion, and Hamid petitioned for review of both BIA decisions.

Hamid now asks us to find the IJ's merits decision unreasonable and his unexplained refusal to allow telephonic expert testimony a violation of due process. Only the second of these issues is subject to our review. Hamid admits that he is an aggravated felon, and the Immigration and Nationality Act (INA) prohibits this court from reviewing the deportation orders of aggravated felons. *See* 8 U.S.C. § 1252(a)(2)(C); *Flores–Leon v. INS,* 272 F.3d 433, 438 (7th Cir.2001). We therefore cannot address the merits of the IJ's decision. However, as Hamid points out, we retain our authority to review "substantial constitutional questions" even in cases over which the INA has otherwise eliminated our jurisdiction. *See Robledo–Gonzales v. Ashcroft,* 342 F.3d 667, 680 (7th Cir.2003). Hamid insists that his due-process challenge presents such a question.

Generally speaking, a meritless constitutional challenge will not qualify as a substantial constitutional question. *See Dave v. Ashcroft,* 363 F.3d 649, 653 (7th Cir. 2004); *Garcia v. Att'y Gen. of the United*

*States,* 329 F.3d 1217, 1222 (11th Cir.2003); *Beslic v. INS,* 265 F.3d 568, 571–72 (7th Cir.2001). To present a meritorious due-process challenge, Hamid must show two things: (1) the IJ's decision to disallow telephonic expert testimony deprived Hamid of a meaningful opportunity to be heard; (2) the deprivation was prejudicial—that is, the disallowed testimony would have potentially affected the outcome of the case. *See Kerciku v. INS,* 314 F.3d 913, 917–18 (7th Cir.2003); *Kuschchak v. Ashcroft,* 366 F.3d 597, 605 (7th Cir.2004).

Although the INA allows an asylum applicant "to present evidence on [his] own behalf, and to cross-examine witnesses presented by the Government," 8 U.S.C. § 1229(b)(4)(B), it does not establish a specific right to present evidence through oral testimony. Nevertheless, in several cases we have held that an IJ's refusal to permit live testimony deprived an asylum applicant of a meaningful opportunity to be heard. *See, e.g., Kerciku v. INS,* 314 F.3d at 918 (an IJ "violates due process by barring complete chunks of oral testimony that would support the applicant's claims"). In none of those cases, however, was the expert's testimony the only evidence that was excluded. In *Kerciku,* for instance, the IJ not only denied live expert testimony, but cut off the bulk of the applicant's own testimony. Similarly, in *Podio v. INS,* 153 F.3d 506, 509–11 (7th Cir.1998), the IJ persistently interrupted the testimony of the applicant and entirely excluded corroborative testimony from his siblings. And in *Niam v. Ashcroft,* 354 F.3d at 659, the IJ disallowed not only the expert's oral testimony but the expert's affidavit as well. We know of no case in which exclusion of an expert's oral testimony alone was considered a denial of due process.

In general, of course, we have considered live testimony preferable to written substitutes. For example, in *Whitlock v. Johnson,* 153 F.3d 380, 388–89 (7th Cir. 1998), we found impermissible the categorical exclusion of live testimony at prison disciplinary hearings, in part because it denies "the opportunity for the Adjustment Committee to evaluate the credibility and demeanor of the inmate's defense witnesses." The importance of live observations in making credibility determinations is presumably why *Kerciku* and *Podio* required admission of live testimony from the applicants and their corroborating witnesses. But observable factors like demeanor and tone of voice are less important when it comes to expert witnesses, whose reliability is supposed to be based on their expertise rather than on what they claim to have witnessed. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

It is therefore not clear that the IJ's decision to exclude Dr. El–Hasan's live testimony deprived Hamid of a meaningful opportunity to be heard. In any event, Hamid must also show that he was prejudiced by that decision. We have found the exclusion of live testimony to be prejudicial when the testimony would have added something that was otherwise missing from the record: corroboration of facts rejected by the IJ as uncorroborated (*Podio,* 153 F.3d at 511); evidence of persecution already suffered (*Kerciku,* 314 F.3d at 918); or facts contrary to the conclusions of the State Department's country report (*Niam,* 354 F.3d at 658–60). In this case, however, the IJ acknowledged and considered Dr. El–Hasan's written assertions that Hamid would be arrested, imprisoned, and tortured if removed to Syria, but found that those assertions (along with the rest of the evidence) did not establish a clear probability that the risk would mate-

rialize. Hamid has not advised us what additional information Dr. El–Hasan would have provided that might have affected that conclusion. *See Roman v. INS,* 233 F.3d 1027, 1033 (7th Cir.2000) (applicant's failure to allege excluded testimony that would potentially affect outcome of hearing was fatal to due-process claim).

In sum, Hamid is an aggravated felon and thus cannot obtain direct review in this court. The exception for "substantial constitutional questions" is inapplicable because he failed to demonstrate that he was denied due process. His petitions for review are thus DISMISSED for lack of jurisdiction.