# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 04-1600 & 04-2013

AKRAM QASSIM HAMID,

*Petitioner*,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

*Respondent.*

_____

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. A77-983-490.

_____

ARGUED NOVEMBER 17, 2004—DECIDED JANUARY 31, 2005
AMENDED AUGUST 2, 2005

_____


Before COFFEY, MANION, and ROVNER, *Circuit Judges.*

COFFEY, *Circuit Judge.* Akram Hamid, a Palestinian resident of Syria, pled guilty to charges of conspiring to defraud and to steal. When deportation proceedings were instituted against him, Hamid asked for withholding of removal, 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture ("CAT"), 1465 U.N.T.S. 85, art. 3 (1984), claiming that he would be persecuted and tortured if returned to Syria. The immigration judge ("IJ") denied relief, finding that persecution and

torture were unlikely. Hamid now claims not only that the IJ's decision was wrong, but that the IJ denied him due process by refusing to allow an expert witness to testify by telephone from London.

Hamid's parents left Palestine in 1948 and became refugees in Syria. They retained their Syrian refugee status when they relocated to Qatar, where Hamid was born in 1966. Although Hamid was born in Qatar, he is not a Qatari citizen, but instead inherited his parents' status as a refugee in Syria. As such, Hamid was subject to mandatory service in the Syrian military. He was allowed to defer his service while pursuing higher education at Damascus University in Syria, but after obtaining his second master's degree he returned to Qatar rather than report for duty. In 1991, after the Gulf War broke out, he came to the United States on a tourist visa (using his Syrian travel documents), found work in Indiana as a business consultant, and eventually married a United States citizen. On September 21, 2001, he was arrested for participating in a scheme (which the record does not fully describe) to steal and to defraud. He pled guilty to two of the conspiracy counts, received a three-year prison sentence (suspended), and was placed in deportation proceedings as an aggravated felon.

At his hearing before the immigration court, Hamid conceded to the court that his crimes were aggravated felonies, *see* 8 U.S.C. § 1101(a)(43)(G) (theft offense for which term of imprisonment is at least one year); § 1101(a)(43)(M)(i) (fraud offense causing loss greater than $10,000); § 1101(a)(43)(U) (attempt or conspiracy), and that he was deportable. He claimed, however, that he feared persecution and torture if returned to Syria.[1] He gave three reasons: his

---

[1] The government originally designated Qatar as the country to which Hamid should be removed, but Hamid claims that Qatar

(continued...)

evasion of military service (punishable by imprisonment); the length of time he has been in the United States (a sign of disloyalty); and the fact that he is Palestinian (a disfavored group in Syria).

In support of his claim, Hamid provided documentary evidence, including reports from the Department of State and from Amnesty International, that torture continued to be practiced in Syrian prisons (particularly military prisons) as recently as 2002. He also provided corroborating affidavits from Dr. Eyal Zisser (Professor of Middle-Eastern History at Tel Aviv University) and Dr. Saleem El-Hasan (President of the Syrian Human Rights Committee in London). Dr. Zisser's affidavit briefly discussed the general political situation in Syria, the government's routine use of torture, and the military service requirement. Dr. El-Hasan's affidavit was more comprehensive, covering in five pages a variety of topics relevant to Hamid's case, such as the general conditions of Palestinian refugees in Syria, the military service requirement, prison conditions, and "the special risks faced by Respondent, Akram Hamid in case of his removal to Syria," including the likelihood that he would be imprisoned and tortured. Hamid asked the IJ to allow Dr. El-Hasan (who was in London) to testify by telephone at the hearing, but the IJ denied the request without explanation, simply writing "Motion telephonic conference denied" at the top of the motion.

The IJ ultimately denied Hamid's request for relief. In a 12-page written opinion, he found that Hamid, although credible, had not met his evidentiary burden for either withholding of deportation or relief under CAT. He noted that Hamid had submitted evidence supporting his claim

[1] (...continued)

will not accept him because he is not a citizen. The government therefore designated Syria as an alternate.

that he believed he would be imprisoned if returned to Syria, but concluded that it did not establish a clear probability of imprisonment. *See INS v. Stevic*, 467 U.S. 407, 430 (1984) (alien seeking withholding of deportation must show clear probability of future persecution); *Lin v. Ashcroft*, 385 F.3d 748, 751 (7th Cir. 2004). The IJ reviewed the information provided in the State Department's 2002 Syria Country Report, along with the assertions made by Dr. Zisser and Dr. El-Hasan in their affidavits that Hamid would be arrested, interrogated, and imprisoned if returned to Syria. The IJ also considered a July 2000 decree by the president of Syria ("Legislative Decree No. 11") waiving military service—along with the penalties for evasion—for expatriates who pay a fee of up to $15,000, which suggested to the IJ that Hamid could buy his way out of imprisonment if necessary. Ultimately, the IJ concluded that Hamid had established a risk of imprisonment, not a clear probability. Additionally, the IJ found that imprisonment would not constitute persecution based on any of the statutorily protected grounds, but simply punishment for evasion of military service.

The IJ also acknowledged, based on the 2002 Syria Country Report, that torture continued to be used in Syria, but found that the Report did not indicate that the use of torture was widespread. The IJ therefore concluded that even if Hamid were to be imprisoned, he would more likely than not be subjected to torture while in prison. *See* 8 C.F.R. § 208.16(c)(2); *Comollari v. Ashcroft*, 378 F.3d 694, 695 (7th Cir. 2004) (alien seeking relief under CAT must show that he will more likely than not be tortured in the country of removal).

After the Board of Immigration Appeals ("BIA") affirmed the IJ's decision, Hamid filed a motion for reconsideration. He cited our decision in *Niam v. Ashcroft*, 354 F.3d 652, 659-60 (7th Cir. 2004), in which we held that an IJ who refused to allow an expert to testify by telephone about

political conditions in Bulgaria deprived the applicant of due process. The BIA summarily denied Hamid's motion, and Hamid petitioned for review of both BIA decisions.

Hamid now argues that the IJ's decision finding him ineligible for CAT relief was unreasonable, and that the IJ's unexplained refusal to allow telephonic expert testimony was a violation of due process. First, we must ask whether we have jurisdiction to consider these arguments. Hamid admits that he is removable as an aggravated felon, and the Immigration and Nationality Act ("INA") generally prohibits us from reviewing the removal orders of aggravated felons. *See* 8 U.S.C. § 1252(a)(2)(C); *Flores-Leon v. INS*, 272 F.3d 433, 438 (7th Cir. 2001). However, § 106(a)(1)(A)(iii) of the recently enacted REAL ID Act of 2005, 119 Stat. 231, 310, *codified at* 8 U.S.C. § 1252(a)(2)(D), gives us jurisdiction to review "constitutional claims or questions of law"—such as Hamid's due-process claim—raised in a petition for review even if the petitioner is an aggravated felon. *See Gattem v. Gonzales*, No. 04-2102, ___ F.3d ___, 2005 WL 1422373, at *2-*3 (7th Cir. Jun. 20, 2005). This jurisdictional grant applies retroactively to all cases administratively decided "before, on, or after the date of enactment." *See* REAL ID Act § 106(b), 119 Stat. at 311; *Gattem*, 2005 WL 1422373, at *3; *Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir. 2005).

We therefore have jurisdiction to consider Hamid's due-process challenge. To succeed in that challenge, Hamid must show two things: (1) the IJ's decision to disallow telephonic expert testimony deprived Hamid of a meaningful opportunity to be heard; and (2) the deprivation was prejudicial—that is, the disallowed testimony would have potentially affected the outcome of the case. *See Kuschchak v. Ashcroft*, 366 F.3d 597, 605 (7th Cir. 2004); *Kerciku v. INS*, 314 F.3d 913, 917-18 (7th Cir. 2003).

Although the INA allows an asylum applicant "to present evidence on [his] own behalf, and to cross-examine wit-

nesses presented by the Government," 8 U.S.C. § 1229a(b)(4)(B), it does not establish a specific right to present evidence through oral testimony. Nevertheless, in several cases we have held that an IJ's refusal to permit live testimony deprived an asylum applicant of a meaningful opportunity to be heard. *See, e.g., Kerciku,* 314 F.3d at 918 (an IJ "violates due process by barring complete chunks of oral testimony that would support the applicant's claims"). In none of those cases, however, was the expert's testimony the only evidence that was excluded. In *Kerciku,* for instance, the IJ not only denied live expert testimony, but cut off the bulk of the applicant's own testimony. *Id.* Similarly, in *Podio v. INS,* 153 F.3d 506, 509-11 (7th Cir. 1998), the IJ persistently interrupted the testimony of the applicant and entirely excluded corroborative testimony from his siblings. And in *Niam,* 354 F.3d at 659, the IJ disallowed not only the expert's oral testimony but the expert's affidavit as well. We know of no case in which exclusion of an expert's oral testimony alone was considered a denial of due process.

In general, of course, we have considered live testimony preferable to written substitutes. For example, in *Whitlock v. Johnson,* 153 F.3d 380, 388-89 (7th Cir. 1998), we found impermissible the categorical exclusion of live testimony at prison disciplinary hearings, in part because it denies "the opportunity for the Adjustment Committee to evaluate the credibility and demeanor of the inmate's defense witnesses." The importance of live observations in making credibility determinations is presumably why *Kerciku* and *Podio* required admission of live testimony from the applicants and their corroborating witnesses. But observable factors like demeanor and tone of voice are less important when it comes to expert witnesses, whose reliability is supposed to be based on their expertise rather than on what they claim to have witnessed. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993).

It is therefore not clear that the IJ's decision to exclude Dr. El-Hasan's live testimony deprived Hamid of a meaningful opportunity to be heard. In any event, Hamid must also show that he was prejudiced by that decision. We have found the exclusion of live testimony to be prejudicial when the testimony would have added something that was otherwise missing from the record: corroboration of facts rejected by the IJ as uncorroborated (*Podio*, 153 F.3d at 511); evidence of persecution already suffered (*Kerciku*, 314 F.3d at 918); or facts contrary to the conclusions of the State Department's country report (*Niam*, 354 F.3d at 658-60). In this case, however, the IJ acknowledged and considered Dr. El-Hasan's written assertions that Hamid would be arrested, imprisoned, and tortured if removed to Syria, but found that those assertions (along with the rest of the evidence) did not establish a clear probability that the risk would materialize. Hamid has not advised us what additional information Dr. El-Hasan would have provided that might have affected that conclusion. *See Roman v. INS*, 233 F.3d 1027, 1033 (7th Cir. 2000) (applicant's failure to allege excluded testimony that would potentially affect outcome of hearing was fatal to due-process claim). We therefore cannot conclude that Hamid was deprived of due process.

Hamid's CAT claim is jurisdictionally more problematic. Before the REAL ID Act, some of our cases suggested that we had no jurisdiction to review CAT claims presented by aggravated felons. *See Espinoza-Franco v. Ashcroft*, 394 F.3d 461, 466 (7th Cir. 2005); *Diakite v. INS*, 179 F.3d 553, 554 (7th Cir. 1999). In other cases, however, we have reviewed such claims despite the petitioners' convictions. *See Ali v. Ashcroft*, 395 F.3d 722, 731 (7th Cir. 2005); *Bosede v. Ashcroft*, 309 F.3d 441, 445 (7th Cir. 2002). Several other circuits have held that although direct review is prohibited, indirect review is available by petition for habeas corpus. *See, e.g., Auguste v. Ridge*, 395 F.3d 123, 137 (3d Cir. 2005); *Kamagate v. Ashcroft*, 385 F.3d 144, 149 (2d Cir. 2004);

*Singh v. Ashcroft*, 351 F.3d 435, 441 (9th Cir. 2003); *Saint Fort v. Ashcroft*, 329 F.3d 191, 200-02 (1st Cir. 2003).

We believe that the REAL ID Act resolves these tensions concerning the scope of our review. It abolishes habeas review of CAT claims, providing that a petition for review filed with the appropriate court of appeals is (with an irrelevant exception) "the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture." REAL ID Act § 106(a)(1)(B), 119 Stat. at 310, *codified at* 8 U.S.C. § 1252(a)(4); *cf.* 8 C.F.R. § 208.18(e)(1) ("[T]here shall be no judicial appeal or review of any action, decision, or claim raised under the Convention [Against Torture] . . . except as part of the review of a final order of removal pursuant to section 242 of the [Immigration and Nationality] Act"). And although CAT claims are subject to the same jurisdictional restrictions as any other claims presented by aggravated felons, *see* 8 C.F.R. § 208.18(e)(1) ("any appeal or petition regarding an action, decision, or claim under the Convention . . . shall not be deemed to include or authorize the consideration of any administrative order or decision, or portion thereof, the appeal or review of which is restricted or prohibited by the Act"), they are also entitled to the same jurisdictional allowances—that is, we may review any "constitutional claims or questions of law" relevant to a petitioner's claim for relief under CAT, despite his aggravated felony conviction, 8 U.S.C. § 1252(a)(2)(D).

Unfortunately for Hamid, his argument that the IJ wrongly denied him CAT relief does not depend upon any constitutional issue or question of law. Rather, it comes down to whether the IJ correctly considered, interpreted, and weighed the evidence presented—that is to say, whether the IJ's conclusion was based on substantial evidence. *See Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004) (describing substantial-evidence standard of review). There is no indication that the IJ misunderstood the

legal standard for granting CAT relief—he properly considered whether it was more likely than not that Hamid would be tortured if returned to Syria, but concluded that it was not. Nor (as discussed above) does it appear that the IJ's treatment of Hamid's claim violated any constitutional standards. We therefore find no basis, within the limited scope of our jurisdiction to consider the claims of aggravated felons, to find that the IJ erred.

In sum, because Hamid is removable as an aggravated felon, we cannot consider whether the IJ's factual conclusions (including his conclusion about the likelihood of torture) are supported by substantial evidence, so we DISMISS his petition for review in Case No. 04-1600 for lack of jurisdiction. We do have jurisdiction, despite Hamid's aggravated felony, to consider the constitutional claim raised in his second petition for review (challenging the BIA's denial of his motion to reopen) but his due-process argument does not succeed, so we DENY his petition for review in Case No. 04-2013.

A true Copy:

       Teste:

                          _____

                          *Clerk of the United States Court of Appeals for the Seventh Circuit*