**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0620n.06
Filed: July 22, 2005

**No. 04-3096**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| FAROOQ NASEEM KHAN, RAZIA SULTANA, and FABIA KHAN, | ) | |
| | ) | |
| Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE BOARD OF** |
| | ) | **IMMIGRATION APPEALS** |
| ALBERTO R. GONZALES, Attorney General, | ) | |
| | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

**Before: COLE and SUTTON, Circuit Judges; BARZILAY, Judge.**[*]

**BARZILAY, Judge**. Farooq Khan, on behalf of himself, his wife and one daughter, all

natives and citizens of Pakistan, petitioned the Bureau of Citizenship and Immigration Services

(formerly Immigration and Naturalization Service) for asylum, withholding of removal, and

protection under the Convention against Torture and other Forms of Cruel, Inhuman or

Degrading Treatment or Punishment ("CAT"). An immigration judge ("IJ") denied the petition,

holding that Khan had not suffered past persecution and did not have a well-founded fear of

future persecution, and the Board of Immigration Appeals ("BIA") affirmed this holding in a per

_____

[*] The Honorable Judith M. Barzilay, Judge of the United States Court of International
Trade, sitting by designation.

curium decision. Khan challenges these determinations, arguing that he and his family were persecuted because of their membership in an opposition political party, and that he has a well-founded fear of future persecution as a result. Khan also contends that his due process rights were violated during his deportation hearing. Although the record does not compel this Court to conclude that the BIA erred in affirming the IJ's decision to deny asylum, withholding of deportation, or protection under the CAT, we find that Khan's deportation hearing did not comport with the requirements of due process, as Khan was not allowed to present a witness to corroborate his testimony. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I.      Factual and Procedural Background

Farooq Khan, his wife Razia Sultana, and their daughter Fabia Khan all entered the United States on or about April 18, 2001 with authorization to stay until May 19, 2001. They then made an administrative application for asylum, and entered into proceedings.

In Pakistan, Khan was the General Secretary of the Central Karachi branch of the Pakistani Muslim League ("PML"), the party in power before the coup d'etat on October 12, 1999, in which President Pervez Musharraf came to power. Khan claims that since the coup, he and his family have been persecuted by the current Pakistani government. He states that in October 1999, he was arrested by agents dressed in army ranger dress and held in jail, incommunicado and without any formal charges, for 15 days. He also claims that he was

2

tortured while in jail, specifically that he was hung from his arms "until all the juice came out" and that ice was placed on his genitals.

After he was released, Khan went underground to recover physically and to avoid the authorities. He went to the U.S. Embassy in Islamabad and obtained a visa for himself, his wife and his daughter. He was not able to obtain visas for his two sons, however, and they remain in Pakistan with an uncle. Khan then came to the United States in fall 2000. While he was in the United States, he was led to believe by some "high officials" in Pakistan that the situation would improve and it would be safe for him to return. Thus, he returned to Pakistan in January 2001. When he returned, however, he learned that "problems started to arise." Specifically, Khan testified that he believed that certain government officials wanted him back in Pakistan so that they could kill him. He also testified that religious fanatics backed by the army were after him. On cross-examination, Khan explained that he did not have problems arriving at the airport because he is friends with the Director of Immigration. Soon thereafter, Khan, his wife, and his daughter returned to the U.S. and filed the application for asylum that is the subject of this action.

Back in Pakistan, a warrant for Khan's arrest on charges of sedition was issued. Khan stated that when the authorities could not find him, military officials arrested his father, also a PML party member, on Maintain Public Order ("MPO") charges. Khan also testified that the government could indefinitely detain someone on MPO charges. When asked by his attorney whether his father was currently in jail, Khan testified that he was. Later, on cross-examination,

Khan testified that his father was not currently in jail, but rather that he was underground, after having served five or six months in jail. Khan also stated that a sealed warrant was issued for his own arrest, and that he believes the warrant is for charges similar to those his father is facing or greater.

Khan also testified that his family's textile business was shut down by the government, but that no record evidence of this fact is available because such paperwork is not regularly provided by the government. Furthermore, Khan alluded to an assassination attempt on his two brothers, both of whom are also politically active in the PML. One of the brothers, Naveed Khan, was present at the hearing and willing to testify, but the IJ did not take his testimony.

On May 13, 2002 the IJ rendered an oral decision denying Petitioners' applications for asylum, withholding of removal, and protection under the Convention Against Torture. Citing the inconsistent testimony regarding the whereabouts of Khan's father, the fact that Khan's application did not mention either the alleged October 1999 incident of torture or his belief that he was being targeted by religious fanatics, and the IJ's determination that events leading to Khan's application were implausible, the IJ concluded that Khan was not credible and therefore could not establish either past persecution or a well-founded fear of future persecution.

The BIA dismissed Khan's appeal on December 29, 2003 and affirmed and adopted the IJ's decision. The BIA also responded to Khan's argument that the IJ erred in not hearing testimony from his brother, holding that Khan's counsel did not make a sufficient proffer and

4

that the brother's testimony "would be duplicate" to Khan's. The BIA also concluded that even if the IJ erred in not allowing the brother to testify, Khan failed to explain how it would have caused a different result in the case.

## II.     Discussion

Because the BIA adopted the IJ credibility determination as its own, this Court reviews the IJ's opinion directly. *Denko v. INS*, 351 F.3d 717, 728 (6th Cir. 2003). The IJ's factual findings supporting his credibility determination are reviewed under the substantial evidence standard. *See Adhiyappa v. INS*, 58 F.3d 261, 265 (6th Cir. 1995). Thus, in order to overturn the IJ's factual findings, the petitioner "must establish that the evidence not only *supports* that conclusion, but *compels* it." *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (citation and internal quotation omitted). The BIA's determination that the IJ did not violate Khan's constitutional due process rights by disallowing Khan's brother to testify at his hearing is a conclusion of law. *See Denko*, 351 F.3d at 726. Thus, it is reviewed de novo by this Court. *Id.; see also Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998).

### A.     Petitioner's Asylum Claim

### 1.     Past Persecution

Khan argues that substantial evidence supports his claim of past persecution. He claims that his arrest and torture, his father's arrest, the actions taken against his family's business, and

the assassination attempts on his brothers all establish that he and his family have been

persecuted in Pakistan.

The IJ found Khan's conflicting statements regarding his father's whereabouts to

constitute a material discrepancy, insofar as they went to the severity of any hardship Khan and

his family suffered as a result of their political activity, and whether any such hardship would

rise to the level of persecution. Regarding the incarceration of his father, Khan argues on appeal

that "[the statement that his father was in jail] was true at the time he filed the application," and

that he didn't mention the fact that his father had subsequently been released because he

"thought it had to stay as it was at the time he filed it, so [he] didn't think of changing that

particular fact." Furthermore, Khan argues on appeal that he did not try to hide the fact and

freely testified that his father was now out of jail on pretrial release.

The IJ next reviewed Khan's testimony regarding the torture he suffered in October 1999.

The IJ pointed out that Khan's application does not mention torture, that Khan offered no

corroborative evidence in the form of medical reports, and that when Khan's wrists were

examined during the hearing, the IJ did not see anything that constituted evidence of torture.

Although Khan explained that he did not include the allegations of torture in his asylum

application because he expected to explain the episode in more detail while in Court, the IJ,

noting that Khan was represented by counsel throughout the application process, found the

explanation unconvincing because of the importance of such injuries to Khan's claim.

Furthermore, the IJ found the omission material because it was specifically relevant to the

6

severity of hardship allegedly suffered.

Finally, the IJ considered the chain of events as described by Khan, finding it implausible in the following respects. First, the IJ found it implausible that Khan heeded the advice of Pakistani government officials to return to Pakistan from the U.S. when he apparently had not relied upon them for any guidance before leaving. Second, the IJ found that Khan's testimony regarding the events surrounding his return to Pakistan, including how people were bargaining for his return, how religious fanatics had emerged, and how he later learned a trap was being laid for him to be implausible "inasmuch as it was very difficult to determine what respondent learned and when he learned it." The IJ also found it implausible that Khan did not make other inquiries before leaving the U.S. Finally, the IJ considered Khan's explanation about why he did not include information regarding religious fanatics in his application – that because the Pakistani Government supports the fanatics Khan considered them to be the same – to be implausible and inadequate because Khan had the opportunity to correct or add to his application.

Khan's testimony and evidence could have been viewed more favorably by the IJ. However, the question before us is not whether the IJ *could* have found for the petitioners, but rather, whether "no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992). Furthermore, the cumulative effect of seemingly minor discrepancies buttress the IJ's adverse credibility determination when viewed in conjunction with more significant omissions and inconsistencies. *See, e.g., Guang Run Yu v.*

7

*Ashcroft*, 364 F.3d 700, 703-04 (6th Cir. 2004) (listing both "major inconsistencies" and "minor inconsistencies" and stating, "[t]aking all these [major and minor] implausibilities and inconsistencies together, we find substantial evidence supporting the IJ's reservations about Yu's credibility"); *see also Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir. 2003) ("So long as one of the identified grounds [for the adverse credibility finding] is supported by substantial evidence and goes to the heart of [petitioner's] claim of persecution, we are bound to accept the IJ's adverse credibility finding.").

### 2. Future Persecution

Because Khan failed to establish past persecution, there is no presumption in his favor regarding future persecution under 8 C.F.R. § 208.13. Further, the IJ correctly denied withholding of removal under the Immigration and Nationality Act and the Torture Convention, because petitioner did not prove he was more likely than not to be persecuted or tortured if returned to Pakistan. *See* 8 C.F.R. § 208.16(b)(2) (withholding under the Act); 8 C.F.R. § 208.16(c)(2) (withholding under the Torture Convention).

### B. Petitioner's Due Process Claim

It is well established that the requirement of due process applies to deportation proceedings. *See Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005); *Podio v. INS*, 153 F.3d 506, 509 (7th Cir. 1998). Although the Supreme Court has never specifically defined the requirements of due precess in a deportation hearing, Congress has set forth minimal procedural

requirements, including a reasonable opportunity to examine the evidence and to present

witnesses, and a decision based on reasonable, substantial, and probative evidence. *See* 8 U.S.C.

§ 1229a(b)(4)(B); *see also Podio*, 153 F.3d at 506 (citing *Batanic v. INS*, 12 F.3d 662 (7th Cir.

1993)).[1]

The BIA found that the IJ did not err in not hearing testimony from Khan's brother. It

found that the nature of the proposed testimony was not clearly described when the IJ asked for a

proffer, and that the circumstances which served as the basis for the grant of withholding of

removal for the brother were different than those present in Khan's case. The BIA also found

that Khan's counsel did not appear to have disputed, during the hearing, the IJ's suggestion that

the testimony would have been simply for "background information." Finally, the BIA held that

even if the IJ erred, Khan had not adequately explained how his brother's testimony would likely

have caused a different result in his case.

---

[1] The *Batanic* Court, along with a number of others, cites to 8 U.S.C. § 1252(b) in support of the proposition that Congress has set forth minimum procedural requirements applicable to deportation hearings. Specifically, the Court states:

> The statutory procedural requirements are set forth in 8 U.S.C. § 1252(b). They are: 1) notice of charges and time and place of proceedings; 2) the privilege of an attorney at no expense to the government; 3) the reasonable opportunity to examine the evidence, present witnesses, and cross-examine adverse witnesses; and 4) a decision based on reasonable, substantial, and probative evidence.

12 F.3d at 667. After the passage of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, a more accurate citation to the statute, however, is 8 U.S.C. § 1229a(b)(4)(B) (the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government but these rights shall not entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's admission to the United States or to an application by the alien for discretionary relief under this Act).

Khan argues on appeal that his brother's testimony would have provided further evidence of the credibility of Khan's own earlier testimony, further explained the condition of their father, and outlined facts regarding persecution suffered by the brothers. This, Khan argues, would have further helped to establish a basis for past persecution of Khan's family. Additionally, Khan argues that what was characterized by the BIA as "assent" was actually an acknowledgment of the IJ's decision to block the testimony – not assent to the denial itself. Finally, Khan asserts that the proffered evidence could have been taken as an offer of proof, and that this proof would have directly impacted upon Khan's credibility.

A petitioner must demonstrate both error and substantial prejudice to prevail on a due process challenge to a removal proceeding. *See Abramovich v. Ashcroft*, 2005 U.S. App. LEXIS 648 at *10 (6th Cir., Jan. 12, 2005) (citing *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000)).

In the case at hand, Khan's brother's testimony would have been directly relevant to the issue of past family persecution. Although Khan's counsel could certainly have been clearer when responding to the IJ's request for a proffer, counsel did indicate that "[Khan's and his brothers' cases] overlap to some extent but his is different . . . and relating to trying to blow up [Khan's brother] with a car and stuff . . . and [he] can testify more about this order, and what's going on with the father . . . ." Thus, by indicating that Khan's brother's case was very similar in many ways to Khan's, that the brother could testify regarding the father's situation, and also by referring to the incident where someone attempted to assassinate the brothers by trying to blow up the family car, counsel made a sufficient proffer of evidence. *See* Fed. R. Evid. 103(a). (Error

may not be predicated upon a ruling which admits or excludes evidence unless a substantial right

of the party is affected, and in case the ruling is one excluding evidence, the substance of the

evidence was made known to the court by offer or was apparent from the context within which

questions were asked.). Unlike in *Abramovich*, 2005 U.S. App. LEXIS 648, where the proffered

testimony would merely have repeated evidence that had already been admitted, Khan's

brother's testimony would have offered new evidence, relevant to Khan's asylum claim. Khan's

brother's testimony would also have buttressed Khan's own credibility relating to various issues,

including the status of the father, and could also have established past persecution of Khan's

politically active family, which testimony could be used to prove Khan's own eligibility for

asylum or withholding of removal.

We must respectfully disagree with the dissent's characterization of Khan's proffer. We

do agree that it was inarticulately and unfortunately expressed. In our view, however, it was

sufficiently, although perhaps minimally, responsive to the issue of Khan's credibility as to three

key issues discussed above: the similarity between Khan's and his brothers' cases – critical, as

these brothers had been granted asylum – the facts of his father's situation, and the assassination

attempts on the brothers. We also find two significant differences between the case at hand and

*Bicja v. INS*, No. 03-3049, 2005 WL 54727, cited by the dissent. The IJ in *Bicja* found

significant that the State Department country reports for Albania indicated that the current

government would not have targeted Bicja for prosecution. *Id.* at *2. In our case, the country

reports for Pakistan clearly support the possibility of persecution for persons associated with the

11

previous government, such as Khan.  J.A. at 530 (U.S. Department of State Country Report on Human Rights Practices - Pakistan).  Also, with regard to allowing witness testimony, after the IJ in *Bicja* expressed doubt as to the value of "cumulative" testimony that had been offered, "counsel declined to advance additional arguments on the issue . . . ." *Id.* at *3.  Khan's counsel, on the other hand, did in our opinion attempt, however inartfully, to counter the IJ's refusal to admit the brother's testimony.

It is important to note, however, that the issue we address here is not whether the evidence as it stands supports the result reached by the immigration judge and the BIA.  Rather, the issue is whether the original deportation hearing was conducted in a fair enough fashion for one to determine that the BIA's decision was based on reasonable, substantial, and probative evidence.  Because we find that it was not, this case is remanded to the IJ for further proceedings in accordance with this opinion.

12

SUTTON, Circuit Judge, dissenting. I concur in the majority's determination that Khan was unable to establish his eligibility for asylum, withholding of removal or protection under the Convention Against Torture. Yet I do not agree with the majority's conclusion that the IJ violated Khan's due process rights and offer this brief explanation why.

On one point, I am quite sympathetic with the majority's perspective. When the credibility of an applicant is in doubt, as was the case here, one would expect an IJ to be quite forgiving in allowing testimony by family members (or other witnesses) that purports to corroborate what the applicant has said or otherwise bolsters the applicant's credibility. Were this such a case, I would be inclined to join the majority's opinion: An IJ cannot simultaneously chastise the applicant's credibility and prohibit him from introducing testimony that rehabilitates or otherwise supports his testimony.

But that is not what happened. Khan did not show below—and he has not shown here—how his brother's testimony would have alleviated the primary concerns that the IJ had about his credibility. As the majority points out, the key gaps in Khan's credibility related to the alleged torture he suffered and the circumstances by which he had tried to return to Pakistan and learned of an alleged plot against his life. Rather than offer his brother's testimony to shore up these deficiencies in his application, Khan offered up his brother's testimony for different reasons and in what can only be described as the most half-hearted of ways. He initially stated that his brother's situation "overlap[ped] to some extent" with his own but then admitted that his brother's situation was different. JA 270. He then said that his brother's testimony "might make

13

it a little more clear[] about what happened to the father," though as for that he acknowledged, "but I think it may be clear enough for the Court at this time anyway." JA 271. He next proffered that the brother could testify about the assassination attempt on the brother's life but never explained how that would bolster the credibility of Khan's testimony about *his* explanations for obtaining asylum.

Making matters worse, Khan admitted that much of the information that the brother could offer was contained in the background materials already submitted to the court. And when the IJ suggested that the testimony was "not going to get us much further," Khan did not contradict the point but seemed to concede it by simply responding, "[o]kay." JA 273. On this record, I cannot see how such a proffer put the IJ to the choice either of admitting the additional testimony or violating the Due Process Clause.

Nor does *Podio v. INS*, 153 F.3d 506 (7th Cir. 1998), establish that the refusal to accept this testimony violates due process. In that case, the IJ refused to allow Podio's relatives to testify without identifying any reason for his decision, then found Podio incredible because his testimony was "uncorroborated." *Id.* at 511. Here the IJ listened to Khan's proffer and, believing that the testimony would merely duplicate evidence already before the court, denied its admission. The better analogy is *Bicja v. INS*, No. 03-3049, 2005 WL 54727 (6th Cir. Mar. 3, 2005). In that case, the IJ stated that "I really don't see anything that [the witness] is going to add unless you can think of something." *Id.* at *3. Bicja's counsel did not advance any further arguments, and the testimony was not admitted. *Id.* Quite similarly here, Khan's counsel was

14

given an opportunity to show why the testimony should be allowed but never gave a meaningful explanation why it would benefit his case. Put another way, if the brother's testimony—as previewed—had been admitted, Khan has not explained how it would have (or could have) altered the key credibility findings at issue in the case. And that is enough to show that the refusal to admit the testimony does not violate due process.