NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0708n.06
Filed: September 29, 2006

No. 05-3213

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Florinde MALAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | On Petition for Review of an Order |
| | ) | of the Board of Immigration |
| Alberto R. GONZALES, Attorney General, | ) | Appeals |
| | ) | |
| Respondent. | ) | |

Before:     BOGGS, Chief Judge; SUTTON, Circuit Judge; and SCHWARZER, District Judge.[*]

PER CURIAM.  Florinde Malaj ("Malaj") petitions for judicial review of a Board of Immigration Appeals ("BIA") decision upholding the Immigration Judge's decision denying her application for asylum, withholding of removal, and protection under the Convention against Torture ("CAT").  For the following reasons, we vacate the decisions of the IJ and BIA and remand for proceedings consistent with this opinion.

## I

Malaj is a native and citizen of Albania in her early 20s.  The following account is based on her testimony before the Immigration Judge ("IJ").  Malaj became involved in politics in Albania in September 2000, when she joined the Democratic Party ("DP"), with which other members of her

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

family were already involved. She served as an observer for the DP on election day in the October 2000 local election and the June 2001 parliamentary election. Following the October election, Malaj gave a speech at a demonstration in which she discussed election irregularities committed by the Socialist Party. The police broke up the demonstration and arrested some demonstrators, including Malaj. The police detained Malaj for six or seven hours, during which they sexually touched her and used offensive language, e.g., "You bitch, you, why are you here, bitch."

While serving as an observer for the June 2001 elections, Malaj was approached by a man who asked her how they could make the Socialist Party win in that area. Malaj responded that it was a Democratic area and that the DP was going to win there. He offered her money to pay people to vote Socialist. She declined. She subsequently noticed the same man talking to voters before they voted. The next day she spoke at a demonstration about how she had been offered money to bribe voters. After the demonstration, she was driving home with a friend, Majlinda Marinaj, when another car forced them over. Two armed, masked men removed Malaj from her car, saying "we going to show you now, how you, about your demonstration. We will show you how to speak now." The men forced Malaj's friend to stay, and took Malaj away in their car.

The men drove about twenty minutes, while "talking dirty to me, to me for my family, was mentioning some of my activities when I was demonstrating with the democracy party, repeating the word I have said during the demonstrations," according to Malaj. She pled for mercy, telling them she would not involve herself in politics again. The men responded that that was not enough; they would have to do or show something to her first. They arrived at a forest in an unpopulated area in which there were abandoned bunkers built during the dictatorship. The men took her into a bunker,

removed her clothes, beat her, bit her, and wrote with a pen on her naked body. They wrote "long live socialist party, long live party in power" on her chest. Both men then raped her.

Malaj fell unconscious; when she regained consciousness it was getting dark (they had abducted her when it was still light out). The men had taken her clothes. She noticed cuts and some blood on her body and that they had written something on her legs. Malaj found a plastic bag to cover herself and walked through the forest to get home, which she thought took about an hour. Because of the late hour, her parents were up waiting for her. After washing herself in the bathroom, including washing off the words the men had written on her body, her brother took her to a hospital about an hour or two away. The doctor at the hospital treated Malaj for "bones, adjusting from my beatings and bruises." Malaj did not tell the doctor she was raped, because she did not want anyone else touching her body again, and the doctor did not examine her pelvic area.

Two or three days thereafter, Malaj's brother and father wanted to take her to a society that provided medical assistance. She was evidently to go in order to get treatment for rape. It is unclear from her testimony (or perhaps the translation thereof) whether Malaj herself went to the clinic or whether her brother and father only went; and she seemed to suggest that she did not tell the doctors there about the rape, either. Malaj did not tell either set of doctors that she was raped because she "just wanted this things to forget and I didn't want to mention anything about it." Malaj explained that she did not want anyone to know, not even a doctor.

Malaj did not go to the police because the station was far, the police would not have cared because there were many cases like hers, and that the police were not the kind to take care of those issues: "The people that do these things, their friends or relatives." She also did not make a report

to the Democratic Party because she did not want anyone to know of the rape, and she "didn't want to hear the party anymore, the word party anymore."

Malaj and her family decided that she should leave Albania a few weeks after the rape. She stated at her hearing before the IJ that a return to Albania would mean the end of her life, that the people who had violated her would do more bad things to her and her family. She said that she was from the most Democratic region and that she would fare worse elsewhere in Albania. Malaj testified that she came to the United States illegally, via Italy and Canada, in July 2001. She did not apply for asylum in Canada because she wanted to be with her brother (a different one) in the United States, and she did not seek asylum in Italy because it was close to Albania and the men who raped her might try to find her.

The IJ denied Malaj's application for asylum, withholding of removal, and protection under the CAT. The IJ concluded that Malaj had not "established her burden of proof as required."

Much of the IJ's oral opinion was given over to "call[ing] into question" or finding "suspect" various aspects of Malaj's testimony and the other evidence, including several documents from Albania, that she submitted in support of her application. "[T]here are some aspects of her claim that give this Court pause," the IJ said. For example, the IJ found Malaj's account of her travel to the United States from Albania, via Italy and Canada, to be vague, and "question[ed] the authenticity" of a document Malaj had submitted that purported to show her membership in the DP by citing a State Department Country Report on Albania, which asserted that many Albanian asylum applicants produce spurious documents. He also stated that while Malaj had noted on an I-589 application for asylum and withholding of removal signed in June 2002 that she had been sexually harassed

- 4 -

following her arrest in October 2000, and repeated that claim during the hearing before the IJ, the notes taken by an asylum officer during an August 2002 interview only referred to her being hit with a rubber stick on that occasion. The IJ also found the reaction of her family on the night Malaj claims to have been raped "suspect in that they take her to the hospital"; seemed to find that the hospital record from the night of the incident, which recorded that Malaj had contusion and multiple lacerations, was inconsistent with her story; questioned the absence of any photographs of Malaj's condition after the incident; and noted that Malaj could not remember the zone number of the polling location she had observed, and apparently did not know the name of the Socialist candidate. The IJ questioned a letter written (after Malaj had arrived in the United States) by Malaj's friend Majlinda Marinaj, in which Marinaj recounted Malaj's abduction, on the ground that Marinaj did not state in the letter that she had called Malaj to check up on her after the incident.

Yet the IJ never explicitly found that Malaj was not credible. The basis of the IJ's opinion was that Malaj had not "established her burden of proof as required" and that "the instant case doesn't reveal sufficient past persecution or warrant a finding of any statutory eligibility for asylum," and that she had also not met the burden for meriting withholding from removal or protection under the CAT. The closest the IJ came to a clear credibility determination was after noting that he would deny the application as a matter of discretion. The IJ stated:

> The Court . . . finds that [Malaj] has not met her burden by the meager proof of the general testimony provided here. The Court did not find her testimony to be specifically detailed and credible or a combination to the testimony corroborative background evidence that would be necessary to prove the claim. The weaker the applicant's testimony, the greater need for corroborative evidence was solely [sic] lacking here.

The IJ granted Malaj voluntary departure, even though her counsel had not sought it. (Malaj's counsel stated that voluntary departure was "not so much a remedy as a curse these days.")

The BIA affirmed the IJ's decision. The BIA denied Malaj's due process claims on appeal, stating that Malaj had not shown that the IJ had been biased or that any of the IJ's actions had prejudiced the outcome of the hearing. With respect to the merits of Malaj's claim, the BIA wrote that

> [w]e agree that the respondent has failed to carry her burden of proof for asylum and has failed to establish grounds for granting the other forms of relief requested. In this regard, the respondent has failed to establish that she has suffered past persecution on account of a protected ground, or that she has a well-founded fear of persecution if returned to Albania on account of her political opinion. Moreover, the record fails to establish that it is more likely than not that she will be persecuted or that she will be tortured upon her return there.

The BIA added that "[i]nasmuch as we are in agreement with the decision of the Immigration Judge as noted above, we adopt and affirm his decision."

## II

### A

"When the BIA adopts the reasoning of the IJ, we review the IJ's decision" directly. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2005). *See also Nazarko v. Gonzales*, 2006 WL 1208071, at *1-2 (6th Cir. 2006); *Kalaj-Pali v. Gonzales*, 174 F. App'x 975, 978 (6th Cir. 2006). We review administrative findings of fact, including whether an alien qualifies as a refugee, under the substantial evidence standard. Such findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005) (internal quotation marks and citations omitted).

Resolution of an asylum request involves a two-step inquiry: (1) whether the alien qualifies as a refugee, and (2) whether the alien merits a favorable exercise of administrative discretion. 8 U.S.C. § 1158(b)(1); *Chen v. Gonzales*, 447 F.3d 468, 471-72 (6th Cir. 2006). The alien has the burden of proof at both stages. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). A "refugee" is defined as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Chen*, 447 F.3d at 471. An alien "must establish either that he has suffered actual past persecution or that he has a well-founded fear of future persecution." *Pilica*, 388 F.3d at 950. Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Pilica*, 388 F.3d at 950 (citing *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)).

An alien may establish a well-founded fear of future persecution by demonstrating: (1) that he has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; (3) that he is unable or unwilling to return to that country because of such fear. *Pilica*, 388 F.3d at 950 (citing *Mikhailevitch*, 146 F.3d at 389; 8 C.F.R. § 208.13(b)(2)(i)). A well-founded fear of persecution must be both subjectively genuine and objectively reasonable. *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004).

The burden of proving eligibility for asylum is less than the burden of proving entitlement to withholding. *Singh*, 398 F.3d at 401. Thus, "an alien who fails to qualify for asylum necessarily does not qualify for withholding of removal." *Ibid*.[1]

When determining that an alien's testimony is not credible, the IJ must include in his or her decision "specific reasons" explaining that conclusion. *Singh*, 398 F.3d at 402. "Moreover, the IJ's 'adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency. If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Id*. at 402 (quoting *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)). Furthermore, "[s]peculation and conjecture cannot form the basis of an adverse credibility finding, which instead must be based on substantial evidence." *Vasha v. Gonzales*, 410 F.3d 863, 869 (6th Cir. 2005) (internal quotation marks removed) (quoting *Shire v. Ashcroft*, 388 F.3d 1288, 1296 (9th Cir. 2004)).

**B**

Malaj challenges the opinions of the BIA/IJ on two grounds: first, that they were unsupported by substantial evidence, and second, that she was denied her due process rights for a variety of reasons. With respect to her first argument, Malaj asserts that the IJ did not make a specific credibility finding, and that one was required.

In *Iao v. Gonzales*, 400 F.3d 530, 534 (7th Cir. 2005), Judge Posner noted that

---

[1]Malaj does not raise any argument regarding the denial of her request for protection under the CAT, and therefore waives such argument. *See Kasa v. Gonzales*, 128 F. App'x 435, 438 n.1 (6th Cir. 2005).

> When an [IJ] says not that he believes the asylum seeker or he disbelieves her but instead that she hasn't carried her burden of proof, the reviewing court is left in the dark as to whether the judge thinks the asylum seeker failed to carry her burden of proof because her testimony was not credible, or for some other reason.

We have previously remanded a petition where the lack of an explicit credibility determination by the IJ rendered this court unable to conduct a meaningful review. *Pirgu v. Ashcroft*, 121 F. App'x 652-53, 654 (6th Cir. 2005). In that case the petitioner claimed that on three occasions, members of the Albanian National Intelligence Service ("SHIK") had confronted him after he had taken part in pro-DP demonstrations; on the last occasion he had been detained for two days and beaten. In denying the application, the IJ did not make a credibility determination regarding the petitioner's testimony. *Id.* at 653-54. We stated that "[a] determination of credibility as to Pirgu's testimony and any other relevant evidence will enable this Court to conduct a meaningful review as to whether a nexus existed between Pirgu's political activities and any abuse that he suffered," and remanded. *Id.* at 654.

Other circuits have followed a similar approach to that of *Pirgu* in analogous cases. In *Diallo v. Ashcroft*, 381 F.3d 687, 699 (7th Cir. 2004), the Seventh Circuit remanded "to untangle the basis for the [IJ's] decision" where, *inter alia*, the IJ failed to make a credibility determination. The *Diallo* court noted that "the limits of our deferential standard of review are tested when we are asked to defer to findings of fact that the [IJ] has not made." *Id.* at 698. In a case where credibility was the

central issue, the Ninth Circuit has held that the BIA erred in not remanding when the IJ had failed to make an explicit credibility determination.[2] *Mendoza Manimbao*, 329 F.3d at 657, 661.

Credibility is central to this case. (Neither the IJ nor the BIA stated, for example, that the rape, if it occurred, did not amount to persecution, or that it was not politically motivated.) The IJ's references to finding aspects of Malaj's story "suspect," or commenting that they gave the IJ pause, do not amount to a credibility determination.

Indeed, the government does not argue that the IJ made a credibility determination. The government instead argues that the IJ did not have to make a specific credibility determination, citing cases in which, for example, the BIA reversed an IJ's credibility determination but upheld the denial of the petitioner's application on the ground that the petitioner failed to produce corroborating evidence when such could be expected to be available, and this court found the BIA's decision to be supported by substantial evidence. *See Liti v. Gonzales*, 411 F.3d 631, 639-40 (6th Cir. 2005); *Dorosh v. Ashcroft*, 398 F.3d 379, 381-83 (6th Cir. 2004).

We have stated that "an applicant for asylum is not required to produce corroborating evidence of persecution: the alien's own testimony can be sufficient to support an application for asylum, where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear." *Pilica*, 388 F.3d at 954 (citations and quotation marks omitted). However, while

---

[2]The court noted that "a passing reference to insufficiency or disbelief cannot constitute an adequate credibility determination." *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 661 (9th Cir. 2003).

> [t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration, we have upheld the BIA's rule that where it is reasonable to expect corroborating evidence . . . [t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof. We have noted that supporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers.

*Vasha*, 410 F.3d at 872 n.3 (ellipsis and second alteration in original) (citations and internal quotation marks omitted).

In this case, the IJ's analysis of the documentary evidence that Malaj had submitted mostly consisted of calling into question (though not negating) the authenticity of documents, which goes to Malaj's credibility. The IJ did note that Malaj had not submitted a police report, but did not address Malaj's contention that she did not go to the police because they would not have cared and her intimation that the police were not to be trusted. *Cf. Liti*, 411 F.3d at 640; *Dorosh*, 398 F.3d at 383. The IJ also found it "curious" that Malaj did not submit any photographs, although again did not address Malaj's statements that because of the nature of the incident she wanted to remove the signs of the assault from her body and not tell or show anyone about the incident. Finally, the IJ questioned her account that she served as an election observer by noting that she had not submitted any documentation of that service, although the IJ did not state that such evidence was of the kind normally created or available in Albania, cf. *Liti*, 411 F.3d at 640, particularly in light of the fact that she submitted a DP membership card.

As in *Pirgu*, we note that in the absence of an explicit credibility determination in this case, we are unable to conduct a meaningful review, and for that reason remand for further proceedings consistent with this opinion. We take the opportunity to note that a determination that the applicant

is not credible must be supported by specific reasons, must be based on issues that go to the heart of an applicant's claim, and must not rest on speculation or conjecture.

## C

Malaj raises a number of due process claims. We review a due process challenge de novo. *Mikhailevitch*, 146 F.3d at 391. "Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing. To constitute fundamental unfairness, however, a defect in the removal proceedings must have been such as might have led to a denial of justice." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (internal quotation marks and citations omitted). Petitioner "has the burden of showing that the alleged error prejudiced his case." *Kasa*, 128 F. App'x at 439.

Malaj argues that the failure to swear in the interpreter in accordance with 8 C.F.R. § 1003.22 amounts to a due process violation. First, the record does not make clear whether the interpreter was sworn in or not. Second, Malaj is unable to show prejudice even if the interpreter was not sworn in. The IJ himself drew attention on two occasions to what it thought was the interpreter's failure to interpret word for word rather than in summary. The IJ warned the interpreter to translate word for word. The IJ also carefully asked Malaj's counsel if he had any objections or concerns about the translation, and the counsel said no, with the exception of the two occasions that the IJ had noted and addressed.

Malaj also challenges the IJ's neutrality. Malaj was entitled to a neutral arbiter. *Hassan v. Gonzales*, 403 F.3d 429, 436-37 (6th Cir. 2006). While the IJ was an assertive questioner of Malaj,

and was occasionally brusque, our review of the record does not reveal that the IJ was biased or that Malaj was unable to present her case fully.

Malaj argues that the IJ's granting her voluntary departure where she did not ask for it violated her right to due process. Malaj cites no case in which the grant of voluntary departure was ruled a denial of due process, and does not demonstrate prejudice.

Malaj also argues that the absence of a credibility finding by the IJ, and what she refers to as the lack of a reasoned opinion by the IJ and BIA generally, violates her right to due process. Malaj cites *Khan v. Gonzales*, 148 F. App'x 303, 307 (6th Cir. 2005), and its statement that "[a]lthough the Supreme Court has never specifically defined the requirements of due process in a deportation hearing, Congress has set forth minimal procedural requirements, including a reasonable opportunity to examine the evidence and to present witnesses, and a decision based on reasonable, substantial, and probative evidence." (citations omitted). Malaj states in her brief that "the lack of a credibility finding is closely intertwined with the evaluation of evidence." Petitioner's Br. at 25. We have previously noted that allegations that the IJ erred in analyzing the evidence do not in themselves result in a due process violation. *Kasa*, 128 F. App'x at 440. We decline to hold that an IJ's neglecting to make an explicit credibility determination, even where one is central to the case, automatically results in a due process violation. We thus reject Malaj's due process challenges to the IJ's decision.

## III

For the foregoing reasons, we VACATE the decisions of the IJ and BIA, and REMAND the matter for proceedings consistent with this opinion.