NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0476n.06

No. 21-3130

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ALEJANDRO MARTINEZ-HERNANDEZ, | ) | **FILED** |
| | ) | Oct 25, 2021 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM |
| | ) | THE UNITED STATES BOARD OF |
| MERRICK B. GARLAND, Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: DAUGHTREY, COLE, and CLAY, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Petitioner Alejandro Martinez-Hernandez petitions for review of the denial by the Board of Immigration Appeals (BIA) of his request for cancellation of removal. Before this court, Martinez-Hernandez argues that the immigration court barred him from presenting the live testimony of his qualifying relatives, amounting to an infringement of his due process rights. Because Martinez-Hernandez, through his attorney, did not take advantage of opportunities to elicit such testimony, and because Martinez-Hernandez failed to identify any resulting prejudice, we must deny the petition for review.

### FACTUAL AND PROCEDURAL BACKGROUND

Martinez-Hernandez, a native and citizen of Mexico, entered the United States without inspection in March 2004. Four months later, his wife also entered the country without authorization, bringing with her from Mexico the couple's eldest son, Alejandro Jr. After settling

in Michigan, the couple had two additional children, Erick (born in May 2005) and Fatima (born in April 2011). Despite securing gainful employment, buying a home, and leading an otherwise exemplary live, Martinez-Hernandez accumulated several traffic tickets, which ultimately brought him to the attention of immigration authorities.

The Department of Homeland Security issued Martinez-Hernandez a notice to appear before an immigration judge to answer the charge that he had entered this country when "not then admitted or paroled after inspection by an Immigration Officer." After an initial hearing at which Martinez-Hernandez admitted the charge and conceded removability, he applied for cancellation of removal based upon his allegation that his deportation would inflict exceptional and extremely unusual hardship on Erick and Fatima, his two children with United States citizenship.[1] Due to the COVID-19 pandemic, however, the hearing was conducted remotely, with Martinez-Hernandez appearing from a detention facility and his lawyer and the government's lawyer participating via telephone.

Martinez-Hernandez was the only witness who testified at the hearing, although he did offer into evidence letters and declarations from family members, his employer, and church acquaintances. Martinez-Hernandez testified that he was the primary breadwinner for his family,

---

[1] Pursuant to the provisions of 8 U.S.C. § 1229b(b)(1), the Attorney General *may* cancel the removal of an alien deportable from the United States if that individual:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

Throughout the course of these proceedings, neither party seriously contested the fact that Martinez-Hernandez satisfied the first three elements of the cancellation-of-removal test. Before the immigration judge and the BIA, therefore, the parties focused on whether Martinez-Hernandez could establish that any burden that would befall his two United States citizen children was "exceptional and extremely unusual."

that his wife, who has no legal status in the United States, sold cosmetics to friends and family, raising $200–250 per week, and that his sons Alejandro Jr. and Erick worked part-time installing carpeting. He also testified that even though the rest of the family would remain in the United States were he to be removed to Mexico, he was afraid that his health conditions (including obesity and high blood pressure) put him at a higher risk for an adverse outcome were he to contract COVID-19—a fear he posits is more likely were he removed to Mexico. Because he would be unable to work were he to fall ill with the virus, Martinez-Hernandez would also be unable to pay the mortgage on his family's house. Martinez-Hernandez further explained that his younger son Erick "is very, very worried about this situation," and that his daughter "Fatima is being troubled because she doesn't know what her future looks like without her father."

Fifteen-year-old Erick's written declaration was introduced into evidence before the immigration judge. There, Erick explained that he has been forced to work with his older brother to bring in additional money ever since immigration officials detained his father. Erick also indicated he: fears contracting COVID-19 through his work; "would be really depressed" if his father were deported; worries about the health of his mother and older brother, both of whom suffer from diabetes; and feels "scared and unsure about what is going to happen to [his] family."

Likewise, Martinez-Hernandez's daughter Fatima, then nine years old, wrote in her declaration that she feels sad and cries because she misses her father. She also misses their family dinners together and bemoaned that she has had to accompany her mother to work on Sundays because no other adult was available to care for her in the family home. In short, she explained that she wants her father to remain in the United States "with [her] so that [she] do[es] not have to suffer and cry."

At the conclusion of the evidentiary hearing, the immigration judge found Martinez-Hernandez to be a credible witness. Nevertheless, the immigration judge denied the application for cancellation of removal because the hardship that Martinez-Hernandez's qualifying relatives, Erick and Fatima, would experience as a result of his removal did not meet the requisite level of "exceptional and extremely unusual hardship." As the immigration judge noted, Martinez-Hernandez's wife and children would remain in the United States, and although the father's absence and inability to contribute immediately to the family's finances would cause hardship, "[t]hese are difficulties that would normally be associated with the separation of a family." Furthermore, the immigration judge recognized that: Martinez-Hernandez's minor children are healthy; the fear of contracting COVID-19 is speculative; Martinez-Hernandez has family members in Mexico who could ease his transition upon deportation; Martinez-Hernandez's testimony that he would seek employment in Mexico to support his family in the United States decreases the financial hardship his absence would pose; and Martinez-Hernandez's wife has a brother in the United States who "could potentially help her" navigate the difficulties that inevitably would ensue. In short, as the immigration judge reiterated, "There will be difficulties in this case. These are difficulties normally associated with family separation." Despite denying cancellation of removal, the immigration judge did grant Martinez-Hernandez "post-conclusion voluntary departure as a matter of discretion."

Martinez-Hernandez appealed to the BIA and alleged:

> [T]he decision [of] the Immigration Judge was in error because he was not permitted to call as witnesses his two U.S. citizen children aged 9- and 15-years old who had wished to offer testimony in support of [Martinez-Hernandez], but were denied an opportunity to testify due to restrictions enforced by the State of Michigan related to the COVID-19 pandemic. As such, [Martinez-Hernandez] was denied Due Process as guaranteed by the U.S. Constitution.

Although Martinez-Hernandez welcomed the BIA "to reverse the ruling of the Immigration Judge and APPROVE [Martinez-Hernandez's] Application for Cancellation of Removal," he made no serious argument in that regard other than to allege that Erick and Fatima's live testimony "could have changed the outcome" of the proceeding.

The BIA affirmed the immigration judge's conclusion that Martinez-Hernandez "did not meet his burden of demonstrating his qualifying relatives would suffer exceptional and extremely unusual hardship if he were removed to Mexico." The BIA also found no merit to Martinez-Hernandez's due process argument, noting that he could have requested that his children testify telephonically in addition to submitting their own written declarations. Moreover, Martinez-Hernandez failed to indicate what additional information his children would have provided at the hearing. Thus, the BIA dismissed the appeal, concluding that "even if [Martinez-Hernandez] could show any procedural irregularity in the proceedings below, which he has not done, he has also not established he may have been prejudiced, such that a remand might be required."

Martinez-Hernandez now petitions for review of that decision. He claims that the immigration judge's failure to allow Martinez-Hernandez's qualifying relatives to offer live testimony amounted to a due process violation. He also once more makes a cursory argument that the immigration judge and the BIA erred in denying his application for cancellation of removal but bases that allegation only on the bald assertion that Erick and Fatima could have explained in greater depth how they would have been affected by their father's removal if they had testified.

## DISCUSSION

At the outset, it is important to identify exactly what issue or issues are properly before us. It is by now well-established that we "may review only those claims 'properly presented to the BIA and considered on their merits.'" *Tomaszczuk v. Whitaker*, 909 F.3d 159, 167 (6th Cir. 2018)

(quoting *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)). In examining Martinez-Hernandez's appeal from the immigration judge's decision, the BIA addressed both Martinez-Hernandez's due process challenge and the implication that his removal to Mexico would result in exceptional and extremely unusual hardship for two of his children. In his petition for review filed in this court, however, Martinez-Hernandez, through counsel, presents a developed argument only on his claim that he was denied due process by the alleged failure of the immigration judge and the BIA to permit him to present live testimony from his qualifying relatives. Consequently, only that discrete issue is properly before us for review. *See, e.g., United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks and citation omitted).

**Standard of Review**

We review *de novo* allegations of due process violations occurring in the course of immigration proceedings. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (citation omitted). "A violation of due process occurs when the proceeding was so fundamentally unfair that the [noncitizen] was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (internal quotation marks and citation omitted). We thus review alleged due process violations in two steps: "[F]irst, whether there was a defect in the . . . proceeding; and second, whether the [noncitizen] was prejudiced because of it." *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005).

**Martinez-Hernandez's Due Process Allegation**

"Noncitizens in removal proceedings have long been protected by the Fifth Amendment's guarantee of due process of law." *Mendoza-Garcia v. Barr*, 918 F.3d 498, 503 (6th Cir. 2019)

(citing *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903)). But Martinez-Hernandez does not assert that taking testimony by video or telephone constitutes an infringement of his due process rights. Indeed, he recognizes that the provisions of 8 U.S.C. § 1229a(b)(2)(A)(iii) and (iv) specifically allow immigration proceedings to be conducted through video conference or telephone conference. *See also* 8 C.F.R. § 1003.25(c). Rather, Martinez-Hernandez contends that the immigration judge prohibited him from calling Erick and Fatima to offer live testimony. Such a prohibition, Martinez-Hernandez contends, prevented him from offering all the evidence he wished to present before the immigration judge.

The administrative record belies Martinez-Hernandez's claim, however. First, Erick and Fatima were listed as qualifying relatives on the witness list Martinez-Hernandez filed with the immigration court. Second, before Martinez-Hernandez testified at the hearing, the immigration judge specifically asked, "The respondent will be your only witness today?" and Martinez-Hernandez's attorney responded, "Yes," indicating no intention to have either Erick or Fatima offer live testimony and be subjected to cross-examination. And finally, after Martinez-Hernandez concluded his testimony, the immigration judge pointedly asked counsel, "Any additional witnesses, Mr. Piecuch?" Again, Martinez-Hernandez's attorney indicated that "[n]o additional witnesses" would be called.

Martinez-Hernandez now insists that the questions posed to counsel by the immigration judge both before and after Martinez-Hernandez's testimony were merely perfunctory and did not indicate an openness to allowing further testimony by other witnesses. The record before us offers no indication, however, that such subterfuge was at play. Furthermore, Martinez-Hernandez's attorney provided no contemporaneous objection that would indicate that he believed that the immigration judge attempted to limit the calling or examination of witnesses. Because the

immigration judge did not deny him the ability to call witnesses, Martinez-Hernandez's citation to *Khan v. Gonzales* is inapposite. 148 F. App'x 303, 304 (6th Cir. 2005) (reversing and remanding where detainee "was not allowed to present a witness to corroborate his testimony").

Regardless, Martinez-Hernandez has failed to indicate what, if any, evidence he thought that his children could have offered that was not conveyed in their written declarations and through his own testimony. He thus cannot establish the prejudice necessary to justify granting relief for this alleged due process violation.

## CONCLUSION

Once again, we are presented with a case in which a beloved family man, a hardworking individual who has lived in this country with no transgressions greater than traffic violations—the fines for which have been paid in full—is to be separated from his wife and children and sent to a country where he has not lived for the past 17 years. Even as we, as a country, continue to feign interest in protecting the integrity of families, our elected leaders refuse to take any steps to reform our arcane and draconian immigration laws that continually fracture family units and place innocent children in tenuous positions. Unfortunately, however, those are laws that we are bound to interpret.

Based on the administrative record before us, we have no choice but to conclude that Martinez-Hernandez has failed to show either that the immigration judge prevented him from reasonably presenting his case or that he suffered prejudice as a result. We thus find no due process violation in this matter and DENY the petition for review.